# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| CH LIQUIDATION ASSOCIATION, | ) |
| an Ohio nonprofit corporation, | ) Case No. 16-51552 |
| | ) |
| Debtor. | ) Judge Koschik |
| | ) |
| (Federal Tax I.D. No. 31-4387577) | ) |
| | ) |

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION FOR
COSHOCTON COUNTY MEMORIAL HOSPITAL ASSOCIATION N/K/A CH
LIQUIDATION ASSOCIATION OF THE DEBTOR AND THE OFFICIAL
<u>COMMITTEE OF UNSECURED CREDITORS</u>**

<table>
<tr><td colspan="2">Dated: May 22, 2017</td></tr>
<tr>
<td>

/s/ Sean D. Malloy<br>
Sean D. Malloy (0073157)<br>
Michael J. Kaczka (0076548)<br>
Maria G. Carr (0092412)<br>
McDONALD HOPKINS LLC<br>
600 Superior Avenue, E., Suite 2100<br>
Cleveland, OH 44114<br>
Telephone:  (216) 348-5400<br>
Facsimile:  (216) 348-5474<br>
E-mail:  smalloy@mcdonaldhopkins.com<br>
      mkaczka@mcdonaldhopkins.com<br>
      mcarr@mcdonaldhopkins.com<br>
<br>
<br>
COUNSEL FOR DEBTOR<br>
AND DEBTOR IN POSSESSION

</td>
<td>

/s/ Daniel A. DeMarco<br>
Daniel A. DeMarco (0038920)<br>
Rocco I. Debitetto (0073878)<br>
HAHN LOESER & PARKS LLP<br>
200 Public Square, Suite 2800<br>
Cleveland, Ohio 44114<br>
Telephone:   (216) 621-0150<br>
Facsimile:    (216) 241-2824<br>
dademarco@hahnlaw.com<br>
ridebitetto@hahnlaw.com<br>
<br>
Andrew H. Sherman<br>
Boris I. Mankovetskiy<br>
SILLS CUMMIS & GROSS P.C.<br>
One Riverfront Plaza<br>
Newark, NJ 07102<br>
Telephone: 973-643-7000<br>
Facsimile: 973-643-6500<br>
asherman@sillscummis.com<br>
bmankovetskiy@sillscummis.com<br>
<br>
CO-COUNSEL TO THE OFFICIAL<br>
COMMITTEE OF UNSECURED<br>
CREDITORS

</td>
</tr>
</table>

{6775021:}

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS; RULES FOR INTERPRETATION ...................................................................... 4

1.1   Definitions. ................................................................................................................... 4

1.2   Rules for Interpretation. ............................................................................................. 15

1.3   Computation of Time. ................................................................................................. 15

1.4   Appendices and Plan Documents. ............................................................................... 15

ARTICLE II TREATMENT OF ADMINISTRATIVE,  PRIORITY TAX, AND UNCLASSIFIED CLAIMS ............ 16

2.1   Treatment of Administrative Expense Claims. .............................................................. 16

2.2   Treatment of Quarterly Fees. ...................................................................................... 17

2.3   Treatment of Priority Tax Claims. ................................................................................ 17

2.4   Treatment of DIP Claims. ............................................................................................ 17

ARTICLE III CLASSIFICATION OF CLAIMS ..................................................................................... 18

3.1   General. ...................................................................................................................... 18

3.2   Classification of Claims Against the Debtor. ................................................................. 18

3.3   Treatment of Claims Against the Debtor. ..................................................................... 18

ARTICLE IV IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS ................................................. 20

4.1   Unimpaired Classes of Claims. .................................................................................... 20

4.2   Impaired Classes of Claims. ........................................................................................ 21

4.3   Impairment Controversies. ......................................................................................... 21

ARTICLE V ACCEPTANCE OR REJECTION OF THE JOINT PLAN;  EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS ............................................................................................................... 21

5.1   Classes Entitled to Vote. ............................................................................................. 21

5.2   Acceptance by an Impaired Class of Claims. ................................................................. 21

5.3   Confirmability and Severability of this Joint Plan. ........................................................ 22

ARTICLE VI MEANS FOR IMPLEMENTATION OF THE JOINT PLAN ............................................... 22

6.1   Corporate Action. ....................................................................................................... 22

6.2   Establishment of the Liquidation Trust and Appointment of the Liquidation Trustee ............ 23

6.3   Appointment of the Debtor Representative, Vesting of Authority in the Debtor Representative, and Revesting of the Tort Claims and Insurance Policies ............................................................. 23

6.4   Sources of Cash for Plan Distributions. ........................................................................ 24

6.5   Use of Existing Accounts. ............................................................................................ 24

6.6   Cancellation of Instruments. ....................................................................................... 24

6.7   Dissolution of the Committee. ..................................................................................... 24

6.8   Utility Deposits. .......................................................................................................... 24

{6775021:}

| | 6.9 | Restricted Funds. | 24 |
|---|---|---|---|
| **ARTICLE VII THE LIQUIDATION TRUST** | | | **25** |
| | 7.1 | Establishment of Liquidation Trust. | 25 |
| | 7.2 | Execution of the Liquidation Trust Agreement. | 25 |
| | 7.3 | Liquidation Trust Assets. | 25 |
| | 7.4 | Governance of Liquidation Trust. | 26 |
| | 7.5 | Liquidation Trustee. | 26 |
| | 7.6 | Oversight Committee | 28 |
| | 7.7 | ASA Committee. | 29 |
| | 7.8 | Indemnification. | 29 |
| | 7.9 | LT Reserves. | 30 |
| | 7.10 | Discharge of Liquidation Trustee and Dissolution. | 30 |
| | 7.11 | Taxes. | 31 |
| **ARTICLE VIII HEALTH CARE CLAIMS PROCESS** | | | **32** |
| **ARTICLE IX INJUNCTIONS, RELEASES AND EXCULPATION** | | | **33** |
| | 9.1 | Term of Bankruptcy Injunction or Stays. | 33 |
| | 9.2 | Releases by the Debtor. | 34 |
| | 9.3 | Releases by Creditors. | 34 |
| | 9.4 | Injunction. | 35 |
| | 9.5 | Exculpation. | 35 |
| | 9.6 | Limitation on Liability of Liquidation Trustee, Debtor Representative, the Oversight Committee and ASA Committee. | 36 |
| **ARTICLE X PLAN DISTRIBUTION PROVISIONS** | | | **36** |
| | 10.1 | Plan Distributions. | 36 |
| | 10.2 | Timing of Plan Distributions. | 37 |
| | 10.3 | Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions. | 37 |
| | 10.4 | Manner of Payment under this Joint Plan. | 38 |
| | 10.5 | Minimum Distributions. | 38 |
| | 10.6 | Rounding. | 38 |
| | 10.7 | Settlement of Claims and Controversies. | 38 |
| | 10.8 | Setoffs and Recoupments. | 38 |
| | 10.9 | Claims Paid or Payable by Third Parties. | 39 |
| **ARTICLE XI PROCEDURES FOR RESOLVING  AND TREATING CONTESTED CLAIMS** | | | **39** |
| | 11.1 | Claim Objection Deadline. | 39 |

11.2 Prosecution of Contested Claims. ................................................................................................. 39

11.3 Claims Settlement. ........................................................................................................................ 40

11.4 Entitlement to Plan Distributions Upon Allowance. ...................................................................... 40

11.5 Estimation of Claims. .................................................................................................................... 40

**ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION OF THE JOINT PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE** ............................................................................................................................40

12.1 Conditions Precedent to Confirmation. ......................................................................................... 40

12.2 Conditions Precedent to the Occurrence of the Effective Date. .................................................... 41

12.3 Waiver of Conditions. .................................................................................................................... 41

12.4 Effect of Non-Occurrence of the Effective Date. ........................................................................... 41

12.5 Option to Delay Occurrence of the Effective Date. ....................................................................... 42

**ARTICLE XIII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................................42

13.1 Assumption and Rejection of Executory Contracts and Unexpired Leases. ................................... 42

13.2 Claims Arising from Rejection, Expiration or Termination. ............................................................ 43

**ARTICLE XIV RETENTION OF JURISDICTION** .................................................................................................43

**ARTICLE XV MISCELLANEOUS PROVISIONS** ................................................................................................45

15.1 Satisfaction of Claims. ................................................................................................................... 45

15.2 Special Provisions Regarding Insurance Policies and Insured Claims. ........................................... 45

15.3 Third Party Agreements; Subordination. ....................................................................................... 46

15.4 Service of Documents. ................................................................................................................... 46

15.5 Headings. ....................................................................................................................................... 47

15.6 Governing Law. .............................................................................................................................. 47

15.7 Exemption from Transfer Taxes. .................................................................................................... 47

15.8 Notice of Entry of Confirmation Order and Relevant Dates. ......................................................... 47

15.9 Interest and Attorneys' Fees. ........................................................................................................ 48

15.10 Modification of the Joint Plan. ...................................................................................................... 48

15.11 Revocation of Plan. ........................................................................................................................ 48

15.12 Compliance with Tax Requirements. .............................................................................................. 48

15.13 Binding Effect. ............................................................................................................................... 49

15.14 Rates. ............................................................................................................................................. 49

15.15 Nondischarge of the Debtor. ......................................................................................................... 49

15.16 Extensions of Time. ....................................................................................................................... 49

15.17 No Admissions. .............................................................................................................................. 49

{6775021:}

# INTRODUCTION[1]

Coshocton County Memorial Hospital Association n/k/a CH Liquidation Association, the above-captioned debtor and debtor in possession (the "Debtor") and the Official Committee of Unsecured Creditors (the "Committee") hereby propose the following joint chapter 11 plan of orderly liquidation for the resolution of all outstanding Claims against the Debtor in the Chapter 11 Case.

Reference is made to the Debtor's First Amended Disclosure Statement for First Amended Joint Chapter 11 Plan of Liquidation for Coshocton County Memorial Hospital Association n/k/a CH Liquidation Association of the Debtor and the Official Committee of Unsecured Creditors (together with its exhibits, and as amended from time to time, the "Disclosure Statement") for a discussion of the Debtor's history, business, properties and operations, risk factors, a summary and analysis of this Joint Plan, and certain related matters. While this Joint Plan is being proposed jointly by Debtor and the Committee, the Disclosure Statement and the representations contained therein are statements solely of the Debtor and remain the sole responsibility of the Debtor. No statement in the Disclosure Statement is or shall be deemed a statement, admission, or other representation of the Committee. Subject to certain restrictions and requirements set forth herein, including, without limitation, Sections 15.10 and 15.11 of this Joint Plan, and in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor and the Committee reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order, and the Bankruptcy Code.

**TRANSMITTED WITH THIS JOINT PLAN IS A COPY OF THE DISCLOSURE STATEMENT REQUIRED BY SECTION 1125 OF THE BANKRUPTCY CODE THE DEBTOR URGES ALL CLAIMANTS AND OTHER PARTIES IN INTEREST TO READ THIS JOINT PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY. NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND ANY DOCUMENTS, SCHEDULES, EXHIBITS, OR LETTERS ATTACHED THERETO OR REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTOR OR THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS JOINT PLAN.**

**THE VOTING DEADLINE TO ACCEPT OR REJECT THIS JOINT PLAN IS ____, EASTERN TIME, _____, 2017, ESTABLISHED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF OHIO.**

**THE DEBTOR AND THE COMMITTEE BELIEVE THAT THIS JOINT PLAN WILL ENABLE THE ESTATE TO EFFICIENTLY LIQUIDATE AND DISTRIBUTE ITS ASSETS FOR THE BENEFIT OF CREDITORS AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11. ADDITIONALLY, THE DEBTOR AND THE COMMITTEE BELIEVE THIS JOINT PLAN PRESENTS THE MOST**

---

[1] Capitalized terms otherwise undefined in this Introduction shall have the meanings subsequently ascribed to them in this Joint Plan.

ADVANTAGEOUS OUTCOME FOR ALL CREDITORS OF THE DEBTOR AND THAT, THEREFORE, CONFIRMATION OF THIS JOINT PLAN IS IN THE BEST INTERESTS OF THE ESTATE. THE DEBTOR AND THE COMMITTEE RECOMMEND THAT CREDITORS VOTE TO ACCEPT THIS JOINT PLAN.

BY ORDER DATED _____, 2017, THE BANKRUPTCY COURT APPROVED THE DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO PERMIT THE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHTS TO VOTE ON THIS JOINT PLAN. APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, HOWEVER, DOES NOT CONSTITUTE A DETERMINATION ON THE MERITS OF THIS JOINT PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT OR THIS JOINT PLAN EXCEPT AS EXPRESSLY INDICATED THEREIN. THE DISCLOSURE STATEMENT AND JOINT PLAN WERE COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM NUMEROUS SOURCES AND ARE BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. HOLDERS OF CLAIMS MUST RELY ON THEIR OWN EXAMINATION OF THE DEBTOR AND THE TERMS OF THIS JOINT PLAN, INCLUDING WITH RESPECT TO THE MERITS HEREOF AND RISKS INVOLVED. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THIS JOINT PLAN. IF ANY INCONSISTENCY EXISTS BETWEEN THIS JOINT PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THIS JOINT PLAN ARE CONTROLLING. THE DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THIS JOINT PLAN. NOTHING STATED IN THE DISCLOSURE STATEMENT SHALL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THIS JOINT PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS. CERTAIN STATEMENTS CONTAINED IN THE DISCLOSURE STATEMENT, BY THEIR NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

SUMMARIES OF PROVISIONS OF AGREEMENTS REFERRED TO IN THIS JOINT PLAN AND THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

HOLDERS OF CLAIMS SHOULD NOT CONSTRUE THE CONTENTS OF THIS JOINT PLAN OR THE DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL,

**BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THIS JOINT PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.**

**HOLDERS OF CLAIMS AND OTHER THIRD PARTIES SHOULD BE AWARE THAT THIS JOINT PLAN CONTAINS INJUNCTIONS AND RELEASES THAT MAY MATERIALLY AFFECT THEIR RIGHTS**.

# ARTICLE I
## DEFINITIONS; RULES FOR INTERPRETATION

## 1.1    Definitions.

As used herein, capitalized terms shall have the respective meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1.1    20 Day Claim means a Claim filed by a supplier of goods for the value of goods received by the Debtor in the ordinary course of business and received by the Debtor within 20 days before the Petition Date entitled to priority under sections 503(b)(9) and 507(a)(2) of the Bankruptcy Code.

1.1.2    Administrative Bar Date means January 20, 2017, the deadline to file proofs of claim in the Chapter 11 Case with respect to certain Administrative Expense Claims, excluding 20 Day Claims, established by the Administrative Bar Date Order.

1.1.3    Administrative Bar Date Order means the Bankruptcy Court's Order establishing January 20, 2017, as the bar date for filing certain Administrative Expense Claims, excluding 20 Day Claims, approving the form and manner of notice thereof, and approving proof of administrative expense claim forms [Docket No. 296].

1.1.4    Administrative Expense Claim means a Claim (other than a Claim included in a Class under this Joint Plan) that is entitled to priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code or Order of the Bankruptcy Court, including, without limitation, (i) Claims incurred by the Debtor (or its Estate) on or after the Petition Date and before the Effective Date for the actual, necessary costs and expenses of preserving the Estate, including, without limitation, Fee Claims, and (ii) 20 Day Claims.

1.1.5    Affiliate shall have the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.1.6    Allowed, when used with respect to any Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim.  For the avoidance of doubt:  (a) to the extent a Claim is not Allowed, such Claim is still subject to objection based upon any potentially applicable rights of avoidance, setoff, or subordination, and any other grounds or defenses; and (b) the Liquidation Trustee shall not be required to consider a Claim an Allowed Claim for distribution purposes if the Claims Objection Deadline has not passed.  For the further avoidance of doubt, any Claims allowed solely for the purpose of voting to accept or reject this Joint Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" under this Joint Plan absent further Order of the Bankruptcy Court. Unless otherwise specified in this Joint Plan or by Order of the Bankruptcy Court, "Allowed" Claims shall not, for the purposes of computation of distributions under this Joint Plan, include interest on such Claims from and after the Petition Date.

1.1.7   ASA Committee means the committee consisting of one or more members selected by the Debtor's board of directors, as set forth in Section 7.7 of this Joint Plan, to monitor and enforce certain post-closing obligations of the Buyer under the Asset Sale Agreement. A list of the proposed member(s) of the ASA Committee shall be filed with the Bankruptcy Court as a Plan Document.

1.1.8   Assets means each and every item of property and interest of the Debtor or the Estate as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, wherever located, including, without limitation, (i) all rights, titles, and interests of the Estate in property of any kind as specified in section 541 of the Bankruptcy Code; (ii) all assets not sold or otherwise disposed of by the Debtor under the Asset Sale Agreement; (iii) all Cash (including, without limitation, all Prime Sale Proceeds) and Causes of Action (including, without limitation, Avoidance Actions) belonging to the Debtor or its Estate; (v) all rights in and proceeds of insurance policies applicable to the Debtor or its Estate and the proceeds thereof; and (vi) any other rights, privileges, including but not limited to the attorney-client privilege, deferred taxes, claims, causes of action or defenses, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law, belonging to the Debtor or its Estate.

1.1.9   Asset Sale Agreement means the Asset Sale Agreement dated June 30, 2016, by and among the Debtor and the Buyer, as amended from time to time.

1.1.10   Assumed Contracts means the contracts assumed by the Debtor under section 365 of the Bankruptcy Code pursuant to the Asset Sale Agreement, Prime Sale Order or any other Order of the Bankruptcy Court.

1.1.11   Assumed Leases means the real and personal property leases assumed by the Debtor under section 365 of the Bankruptcy Code pursuant to the Asset Sale Agreement, Prime Sale Order, or any other Order of the Bankruptcy Court.

1.1.12   Avoidance Actions means all Causes of Action of the Estate that arise under chapter 5 of the Bankruptcy Code, including under sections 502, 542, 544, 545, 547, 548, 549, 550, 551, 552 and/or 553 of the Bankruptcy Code, and any other avoidance actions under the Bankruptcy Code (including the Tetra Avoidance Action) and other similar state law claims and causes of action, whether or not such action was commenced prior to the Effective Date.

1.1.13   Bankruptcy Code means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and applicable to the Chapter 11 Case.

1.1.14   Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division (Akron).

1.1.15   Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and any local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.1.16 <u>Bar Dates</u> means the General Bar Date, the Administrative Bar Date, and any other applicable deadline to file a proof of claim in the Chapter 11 Case.

1.1.17 <u>Bar Date Notice</u> means the notice approved by the Bar Date Order, which set November 18, 2016, as the General Bar Date and December 27, 2016, as the Governmental Bar Date.

1.1.18 <u>Bar Date Order</u> means that order of the Bankruptcy Court [Docket No 203] that established the General Bar Date and Governmental Bar Date and established related procedures.

1.1.19 <u>Business Day</u> means any day other than a Saturday, a Sunday, a "legal holiday" (as defined by Bankruptcy Rule 9006(a)), or any other day on which commercial banks are required or authorized to close for business in New York, New York.

1.1.20 <u>Buyer</u> means Prime Healthcare Foundation–Coshocton, LLC and Prime Healthcare Foundation, Inc., including any successors or assigns.

1.1.21 <u>Cash</u> means legal tender of the United States of America or equivalents thereof, including, without limitation, payment in such tender by check, wire transfer or any other customary payment method.

1.1.22 <u>Causes of Action</u> means all claims, actions, causes of action, choses in action, liabilities, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, foreseen, unforeseen, asserted, assertable directly or derivatively, arising in law, equity or otherwise, that are or may be pending on the Effective Date that are property of the estate and/or have accrued in favor of the Debtor, its estate, and/or the Committee which may be instituted or prosecuted by the Liquidation Trustee on behalf of the Estate, or by the Debtor Representative on behalf of the Debtor, against any Person, whether asserted or unasserted as of the Effective Date, including, without limitation: (i) the right to object to Claims; (ii) all avoidance powers, actions (including Avoidance Actions), rights, remedies or affirmative defenses under federal or state law, including the Bankruptcy Code; and (iii) all Tort Claims. Any and all Causes of Action are preserved under this Joint Plan for the benefit of the Liquidation Trust.

1.1.23 <u>Chapter 11 Case</u> means the case commenced on the Petition Date by the Debtor in the Bankruptcy Court under chapter 11 of the Bankruptcy Code and being administered by the Bankruptcy Court under the case styled as *In re CH Liquidation Association*, Case No. 16-51522 (AMK).

1.1.24 <u>Claim</u> shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code. For the avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or

omission(s) may be sufficient to establish liability when injuries/damages are manifested; and (c) at the time of the Effective Date, the Debtor has received one or more demands for payment for injuries or damages arising from such acts or omissions.

1.1.25  <u>Claim Objection Deadline</u> means the deadline for filing objections to Claims as set forth in Section 11.1 of this Joint Plan.

1.1.26  <u>Claims Agent</u> means Garden City Group, LLC, retained as claims and noticing agent pursuant to 28 U.S.C. § 156(c) in the Chapter 11 Case.

1.1.27  <u>Class</u> means a category of Claims set forth in Article III of this Joint Plan, as such term is used and described in section 1122 and section 1123(a)(1) of the Bankruptcy Code.

1.1.28  <u>Committee</u> means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee pursuant to section 1102(a) of the Bankruptcy Code.

1.1.29  <u>Community Hospital</u> means the community hospital formerly known as Coshocton County Memorial Hospital Association located at 1460 Orange Street, Coshocton, Ohio 43812.

1.1.30  <u>Confirmation Date</u> means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.31  <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to consider confirmation of this Joint Plan, as such hearing may be continued from time to time.

1.1.32  <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming this Joint Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.33  <u>Contested Claim</u> means such Claim

(a)     to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed;

(b)     if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (A) the proof of claim amount exceeds the amount indicated in the Schedules, or (B) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or this Joint Plan;

(c)     if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Claim Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or this Joint Plan; or

16-51552-amk    Doc 405    FILED 05/22/17    ENTERED 05/22/17 17:52:40    Page 11 of 54

(d)       as to which an objection has been filed on or before the Claim Objection Deadline; provided, that a Claim that is Allowed and is fixed in amount and priority pursuant to this Joint Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

1.1.34  D&O Claims means any and all rights and claims against the Debtor's current or former directors, trustees and officers for, *inter alia,* breach of fiduciary duty and the proceeds of any such claims, including any Insurance Policies associated therewith.

1.1.35  D&O Policies means collectively, any "Directors and Officers" and other fiduciary liability insurance policies belonging to the Debtor or under which the Debtor is named as an insured or additional insured.

1.1.36  Debtor means CH Liquidation Association f/k/a/ Coshocton County Memorial Hospital Association.

1.1.37  Debtor in Possession means the Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.1.38  Debtor Representative means the debtor representative selected to serve pursuant to Section 6.3 of this Joint Plan. The identity of such Person shall be filed with the Bankruptcy Court as a Plan Document no later than five (5) Business Days prior to the hearing on the adequacy of the Disclosure Statement.

1.1.39  DIP Claim means any Claim against the Debtor arising from or related to the DIP Documents and any Claim by the DIP Lender under the Final DIP Order, including, but not limited to, principal, interest, fees, costs and expenses thereunder, which have been satisfied pursuant to the Prime Sale Order.

1.1.40  DIP Collateral has the meaning ascribed to it in the Final DIP Order.

1.1.41  DIP Documents means the DIP Loan Agreement, together with all documents, instruments and agreements executed or entered into in connection therewith and any amendments thereto.

1.1.42  DIP Facility means that certain debtor-in-possession financing facility governed by the Final DIP Order and the DIP Documents.

1.1.43  DIP Loan Agreement means that certain debtor-in-possession credit agreement dated as of June 30, 2016, by and among the Buyer, as lender, and the Debtor, as borrower, as amended from time to time.

1.1.44  Disallowed, when used with respect to a Claim, means all or such part of a Claim that has been disallowed or released by a Final Order, operation of law, written release or settlement, the provisions of this Joint Plan, or otherwise, or withdrawn by the holder of the Claim.

16-51552-amk    Doc 405    FILED 05/22/17    ENTERED 05/22/17 17:52:40    Page 12 of 54

1.1.45  <u>Disclosure Statement</u> means the disclosure statement filed with respect to this Joint Plan, as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules thereto.

1.1.46  <u>Disclosure Statement Order</u> means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code, and (b) authorizing the use of the Disclosure Statement for soliciting votes on this Joint Plan.

1.1.47  <u>Effective Date</u> means a date selected by the Debtor, after consultation with the Committee, which shall be a Business Day after all of the conditions specified in Section 12.2 have been satisfied or waived in accordance with Section 12.3 of this Joint Plan.

1.1.48  <u>Estate</u> means the estate of the Debtor created under section 541 of the Bankruptcy Code.

1.1.49  <u>Estate Cash</u> means all Cash of the Debtor and the Estate as of the Effective Date, including but not limited to the Estate Proceeds and the Health Care Claims Fund, but not including any Restricted Funds.

1.1.50  <u>Estate Proceeds</u> means the Prime Sale Proceeds and any post-closing operating cash belonging to the Debtor or its estate as of the Effective Date.

1.1.51  <u>Excluded Assets</u> means all assets of the Debtor not sold or otherwise transferred to the Buyer under Section 1.8 of the Asset Sale Agreement.

1.1.52  <u>Excluded Contracts</u> means all contracts that are not Assumed Contracts.

1.1.53  <u>Excluded Leases</u> means all leases that are not Assumed Leases.

1.1.54  <u>Exculpated Parties</u> means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) the Debtor; (ii) the directors, officers, agents, members of management and other employees of the Debtor, respectively; (iii) the Committee and its members (only to the extent of them acting in such capacities on behalf of the Estate); (iv) predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, solely to the extent such parties are or were acting in such capacity of any of the Persons identified in (i) and (ii) above on or after the Petition Date; and (v) predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, solely to the extent such parties are or were acting in such capacity of any of the Persons identified in (iii) above.  For the avoidance of doubt, Genesis and its predecessors, successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals are not Exculpated Parties.

1.1.55  <u>Fee Application</u> means an application for allowance and payment of a Fee Claim.

1.1.56  Fee Claim means a Claim of a Professional Person or a Claim for substantial contribution or reimbursement of expenses incurred as a member of the Committee pursuant to section 503(b) of the Bankruptcy Code.

1.1.57  Final DIP Order means the order approving the DIP Loan Agreement and related documents on a final basis entered by the Bankruptcy Court on July 22, 2016 [Docket No. 91], as the same may be amended or modified from time to time.

1.1.58  Final Order means an order or judgment of the Bankruptcy Court (or any other court or adjudicative body of competent jurisdiction) entered on the docket of such court, which has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, motion for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or any other court or adjudicative body) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, no order or judgment shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

1.1.59  General Bar Date means November 18, 2016, which was the general deadline to file proofs of claim, including 20 Day Claims, in the Chapter 11 Case as established by the Bar Date Order.

1.1.60  General Unsecured Claim means any Claim against the Debtor other than (i) an Administrative Expense Claim (including Fee Claims and 20 Day Claims), (ii) a fee payable pursuant to section 1930 of title 28 of the United States Code, (iii) a Priority Tax Claim, (iv) a Priority Non-Tax Claim, (v) a DIP Claim, (vi) a Non-Lender Secured Claim, (vii) an Insured Claim, (viii) a Health Care Claim (except to the extent a Provider filed a proof of claim and elects to be treated as a General Unsecured Claim under the terms of this Joint Plan), or (ix) a Genesis Claim (except to the extent Genesis is determined by a Final Order to have an Allowed Claim that is to be treated as a general unsecured claim that is not subordinated pursuant to Section 510 of the Bankruptcy Code).

1.1.61  Genesis means Genesis HealthCare System and any Affiliates thereof.

1.1.62  Genesis Claim means any Claim asserted by Genesis against the Debtor.

1.1.63  Governmental Bar Date means December 27, 2016, which was the governmental deadline to file proofs of claim in the Chapter 11 Case as established by the Bar Date Order.

1.1.64  Health Care Claim means a Claim of a Provider arising prior to the Petition Date for medical services rendered to an employee of the Debtor or such employee's family members who were covered under the Health Care Plan.

1.1.65 <u>Health Care Claims Fund</u> means Cash in the amount of $1,200,000 currently held by MedBen that will be remitted on the Effective Date to a segregated account controlled by the Liquidation Trustee and will serve as the sole source of funding for the reconciliation of Class 3 Claims and the treatment of holders of Class 3 Claims.

1.1.66 <u>Health Care Plan</u> means the Debtor's self-insured medical health insurance program for its covered employees.

1.1.67 <u>Hospital</u> means the Community Hospital and the Other Businesses.

1.1.68 <u>Insider</u> shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

1.1.69 <u>Insurance Policies</u> means collectively, any policies of insurance coverage of any kind (including any and all amendments, endorsements, renewals, and extensions thereof) that at any time belonged or belong to or included or include the Debtor as a named insured, additional insured, or beneficiary, including, without limitation, the D&O Policies.

1.1.70 <u>Insured Claim</u> means any Claim against the Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein the Debtor is an insured or beneficiary of the coverage the Debtor or any other Person.

1.1.71 <u>Internal Revenue Code</u> means the Internal Revenue Code of 1986, as amended, codified at title 26 of the United States Code, together with any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

1.1.72 <u>IRS</u> means the Internal Revenue Service.

1.1.73 <u>Joint Plan</u> means this joint chapter 11 plan for the Debtor in the Chapter 11 Case, including all supplements, appendices and schedules hereto, either in their present form or as same may be amended, supplemented or otherwise modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.1.74 <u>Liquidation Trust</u> means the trust established pursuant to Article VII of this Joint Plan.

1.1.75 <u>Liquidation Trust Agreement</u> means the agreement, in a form reasonably acceptable to the Debtor and the Committee, to be dated on or before the Effective Date, establishing the terms and conditions of the Liquidation Trust, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document.

1.1.76 <u>Liquidation Trust Assets</u> means the Debtor's and the Estate's right, title and interest in all of the Assets, including, without limitation, the Excluded Assets, the Estate Cash, and the Avoidance Actions, and the proceeds of any Tort Claims and Insurance Policies applicable thereto, but not including Restricted Funds, which shall revest in the Debtor until transferred pursuant to Section 6.9 of this Joint Plan.

1.1.77 <u>Liquidation Trust Beneficiaries</u> means all individuals and entities entitled to a Plan Distribution from the Liquidation Trust.

1.1.78 <u>Liquidation Trust Expenses</u> means all reasonable costs and expenses incurred on or after the Effective Date by the Liquidation Trustee associated with the implementation and administration of the Liquidation Trust and this Joint Plan, including the costs and expenses of the Debtor Representative and the ASA Committee (as provided for in Section 7.7).

1.1.79 <u>Liquidation Trust Indemnified Parties</u> has the meaning set forth in Section 7.7 of this Joint Plan.

1.1.80 <u>Liquidation Trustee</u> means the trustee (and any successor trustee) selected to serve as trustee pursuant to Article VII of this Joint Plan and under the Liquidation Trust Agreement. The identity of the initial trustee shall be filed with the Bankruptcy Court as a Plan Document no later than five (5) Business Days prior to the hearing on the adequacy of the Disclosure Statement.

1.1.81 <u>LT Reserve</u> means a reserve established by the Liquidation Trustee on account of Contested Claims held by any Liquidation Trust Beneficiary that, if Allowed, would entitle such Liquidation Trust Beneficiary to a Plan Distribution.

1.1.82 <u>MedBen</u> means MedBen Analytics, LLC and Medical Benefits Administrators, Inc.

1.1.83 <u>Non-Lender Secured Claim</u> means a Claim, other than a DIP Claim, that is (a) secured by a lien on any Assets, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Case, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) asserted against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; or (c) deemed or treated under this Joint Plan as a Non-Lender Secured Claim.

1.1.84 <u>Notice of Confirmation</u> means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims.

1.1.85 <u>Other Businesses</u> means the outpatient, ancillary and other health care businesses incident to the operation of the Community Hospital as specifically identified on Schedule A to the Asset Sale Agreement.

1.1.86 <u>Oversight Committee</u> means the committee consisting of one or more members selected by the Committee that are or represent Liquidation Trust Beneficiaries, as set forth in Section 7.6 of this Joint Plan, to advise and assist the Liquidation Trustee in the implementation and administration of the Liquidation Trust pursuant to the Liquidation Trust Agreement and this Joint Plan. A list of the proposed members of the Oversight Committee shall be filed with the Bankruptcy Court as a Plan Document.

1.1.87 Person means an individual, corporation, partnership, limited liability company, limited liability partnership, joint stock company, joint venture, trust, estate, unincorporated association, unincorporated organization, or any government, governmental entity, or political subdivision, department, agency, or instrumentality thereof, or any other entity.

1.1.88 Petition Date means June 30, 2016, the date on which the Debtor commenced the Chapter 11 Case.

1.1.89 Plan Distribution means the payment or distribution under this Joint Plan of Cash, Assets, securities or instruments evidencing an obligation under this Joint Plan to the holder of an Allowed Claim.

1.1.90 Plan Distribution Date means (i) with respect to any Claim other than a General Unsecured Claim, Health Care Claim, or Genesis Claim (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, and (ii) with respect to any General Unsecured Claim, Health Care Claim, or Genesis Claim such date(s) that the Liquidation Trustee determines in its reasonable discretion.

1.1.91 Plan Documents means the compilation of documents and forms of documents, schedules and exhibits to this Joint Plan that aid in effectuating this Joint Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4 of this Joint Plan including, without limitation, the Liquidation Trust Agreement.

1.1.92 Prime Sale means the sale of substantially all of the Debtor's assets to the Buyer.

1.1.93 Prime Sale Order means the Order of the Bankruptcy Court approving the Prime Sale [Docket No. 207].

1.1.94 Prime Sale Proceeds means the total consideration received by the Debtor from the Buyer in the Prime Sale.

1.1.95 Priority Non-Tax Claim means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Non-Lender Secured Claims, Administrative Expense Claims and Priority Tax Claims.

1.1.96 Priority Tax Claim means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.97 Professional Person means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

1.1.98 Pro Rata Share means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such class, including Contested Claims,

16-51552-amk    Doc 405    FILED 05/22/17    ENTERED 05/22/17 17:52:40    Page 17 of 54

but excluding Disallowed Claims, (a) as calculated by the Liquidation Trustee; or (b) as determined or estimated by the Bankruptcy Court.

1.1.99 <u>Provider(s)</u> means any Person that provided medical services to the Debtor's employees and such employee's family members and submitted medical claims pursuant to the Health Care Plan.

1.1.100 <u>Released Parties</u> means all Persons that are or were at any time on or after the Petition Date, and whether or not any such Person currently retains such capacity or position, (i) Debtor; (ii) Joseph Oriti and Matthew Caine, the Chief Restructuring Officer and the Vice President of Development of the Debtor, respectively; (iii) the Liquidation Trustee; (iv) the Committee and its members (solely with respect to acts in the capacity of a committee member); and (v) predecessors, successors and assigns, subsidiaries, officers, directors, attorneys, advisors, accountants, investment bankers, consultants, and other professionals, solely to the extent such parties are or were acting in such capacity of any of the Persons identified in (i), (ii), (iii), and (iv) above on or after the Petition Date. For the avoidance of doubt, Genesis and its predecessors, successors and assigns, subsidiaries, affiliates, members, managers partners, officers, directors, trustees, agents, attorneys, advisors, accountants, investment bankers, consultants, and other professionals are not Released Parties. For the avoidance of doubt, other than Joseph Oriti and Matthew Caine, who are Released Parties pursuant to (ii) above, predecessors, successors and assigns, subsidiaries, affiliates, members, managers, partners, officers, trustees, and directors of the Debtor are not Released Parties with respect to any action or inaction taken in such capacity prior to the Petition Date

1.1.101 <u>Restricted Funds</u> means funds from charitable donations restricted in use by such donations, which must be assigned to an appropriate not for profit entity under applicable law.

1.1.102 <u>Schedules</u> means unless otherwise stated, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor from time to time in accordance with Bankruptcy Rule 1009.

1.1.103 <u>Securities Act</u> means the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.

1.1.104 <u>Tetra</u> means TFG-Ohio, L.P. and/or Tetra Financial Group, including any successors or assigns.

1.1.105 <u>Tetra Avoidance Action</u> means that adversary proceeding commenced by the Committee against Tetra styled as *The Official Committee of Unsecured Creditors of Coshocton County Memorial Hospital Association v. TFG-Ohio, L.P.*, Adv. Proc. No. 16-05051.

1.1.106 <u>Tort Claims</u> means any and all claims of the Debtor and/or that have accrued in favor of the Debtor, its estate and/or the Committee based on any tort, including, but not limited to, D&O Claims.

1.1.107 <u>Utility Deposits</u> means deposits with utilities made by the Debtor after the Petition Date pursuant to section 366(b) of the Bankruptcy Code.

1.1.108 <u>Voting Deadline</u> means the deadline established by an Order of the Bankruptcy Court for voting to accept or reject this Joint Plan.

## 1.2    **Rules for Interpretation.**

For purposes of this Joint Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural and terms denoting one gender shall include the other gender; (b) the Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of this Joint Plan is determined by the Bankruptcy Court to be ambiguous; (c) any reference in this Joint Plan to a contract, instrument, release, or other agreement or document attached as an Exhibit to this Joint Plan or included in the Plan Documents being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Joint Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Joint Plan; (e) any reference to a Person as a holder of a Claim includes that Person's successors and assigns; (f) all references in this Joint Plan to Sections and Articles are references to Sections and Articles of or to this Joint Plan or the Plan Documents, as the same may be amended, waived or modified from time to time; (g) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Joint Plan as a whole and not to any particular Section, subsection or clause contained in this Joint Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Joint Plan; (i) unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Ohio, without giving effect to the conflicts of laws principles thereof, shall govern the construction of this Joint Plan and any agreements, documents and instruments executed in connection with this Joint Plan, except as otherwise expressly provided in such instruments, agreements or documents. (j) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (k) the term "including" shall be construed to mean "including, but not limited to," "including, without limitation," or words of similar import.

## 1.3    **Computation of Time.**

In computing any period of time prescribed or allowed by this Joint Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, distribution, act or deadline under this Joint Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, and if so made, performed or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

## 1.4    **Appendices and Plan Documents.**

All appendices to this Joint Plan and the Plan Documents are incorporated into and are a part of this Joint Plan as if set forth in full herein.  Except as otherwise provided herein, all Joint

Plan Documents shall be filed with the Bankruptcy Court not later than five (5) days prior to the Voting Deadline. Holders of Claims may obtain a copy of the Plan Documents (at no cost if delivered electronically), once filed, at https://cases.gcginc.com/ccmh, or by a written request sent to:

> McDONALD HOPKINS LLC
> 600 Superior Avenue, East
> Suite 2100
> Cleveland, OH 44114
> Attention: Maria G. Carr
> Facsimile: (216) 348-5474
> Email: mcarr@mcdonaldhopkins.com

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE,
## PRIORITY TAX, AND UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified for purposes of this Joint Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code, respectively. All Administrative Expense Claims and Priority Tax Claims shall instead be treated separately as unclassified Claims along with certain other unclassified Claims under the terms set forth in this Article II.

**2.1** **Treatment of Administrative Expense Claims.**

Administrative Expense Claims shall be treated as follows, as applicable:

(a)     Time for Filing.

All holders of Administrative Expense Claims (other than certain claims, including Fee Claims, excepted from the Administrative Bar Date under the Administrative Bar Date Order) were required to file and serve proofs of claim (i) with respect to their 20 Day Claims by the General Bar Date; and (ii) with respect to their Administrative Expense Claims by the Administrative Bar Date, January 20, 2017. **Failure to timely file and serve a proof of claim with respect to any such 20 Day Claim in accordance with the General Bar Date and any such Administrative Expense Claim in accordance with the Administrative Bar Date Order resulted in the 20 Day Claim and/or Administrative Expense Claim being forever barred, and no distribution shall be made under this Joint Plan on account of any such barred Claim.**

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred, and no distribution shall be made under this Joint Plan on account of any such barred Claim.**

(b)     General.

Except to the extent any Person entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full satisfaction if its Allowed Administrative Expense Claim, Cash in an amount equal to the amount of such Allowed Administrative Expense Claim on the later of (i) thirty (30) days after the Effective Date or (ii) the date of entry of a Final Order determining and allowing such Claim as an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Expense Claim.

(c) Fee Claims.

A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 2.1(a) shall become an Allowed Administrative Expense Claim only to the extent allowed by Order of the Bankruptcy Court. All Allowed Fee Claims shall be treated as Allowed Administrative Expense Claims as set forth in Section 2.1(b) above, or shall be paid on such other terms as may be agreed upon in writing by the holder of the applicable Claim.

## 2.2    Treatment of Quarterly Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date. All such fees arising after the Effective Date shall be an administrative expense of the Liquidation Trust and shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.  For purposes of calculation quarterly fees, a payment or transfer by the Debtor to the Liquidation Trust shall constitute a distribution, but a payment or transfer of the same assets or proceeds thereof from the Liquidating Trust shall not constitute a distribution.

## 2.3    Treatment of Priority Tax Claims.

Except to the extent the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of such Allowed Priority Tax Claim, Cash in an amount equal to the amount of such Allowed Claim on the later of (i) thirty (30) days after the Effective Date or (ii) the date of entry of a Final Order determining and allowing such Claim as an Allowed Priority Tax Claim, or as soon thereafter as is practicable; provided, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Priority Tax Claim.

Notwithstanding the provisions of this Section 2.3, the holder of an Allowed Priority Tax Claim will not be entitled to receive any payment on account of any penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) arising with respect to or in connection with the Allowed Priority Tax Claim.  The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Liquidation Trust, or their respective property.

## 2.4    Treatment of DIP Claims.

Under the Prime Sale Order, all DIP Claims of the Buyer arising under or related to the DIP Documents and all attendant liens and security interests in and on the DIP Collateral, were satisfied. The Buyer shall not receive or retain any property or rights under this Joint Plan on account of such DIP Claims; provided, however, that nothing in this Joint Plan shall be deemed to amend or supersede the Prime Sale Order.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

**3.1**     **General.**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, all Claims are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to this Joint Plan, as set forth herein. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date. In no event shall any holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such holder's Claim.

**3.2**     **Classification of Claims Against the Debtor.**

The following chart assigns a number and letter to each Class against the Debtor for purposes of identifying each separate class:

| Class | Claim |
|-------|-------|
| 1. | Priority Non-Tax Claims |
| 2. | Non-Lender Secured Claims |
| 3. | Health Care Claims |
| 4. | General Unsecured Claims |
| 5. | Genesis Claims |

**3.3**     **Treatment of Claims Against the Debtor.**

The Classes of Claims against the Debtor shall be treated under this Joint Plan as set forth below. The Debtor reserves the right to treat this Joint Plan as a motion for the equitable subordination of any creditor, subject to the presentation of supporting evidence at the Confirmation Hearing.

(a)     Class l — Priority Non-Tax Claims.

{6775021:}

18

Each holder of an Allowed Priority Non-Tax Claim against the Debtor shall be unimpaired under this Joint Plan and shall receive, in full satisfaction of its Priority Non-Tax Claim, Cash equal to the amount of such Allowed Priority Non-Tax Claim on the later of (a) the Plan Distribution Date or (b) the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

(b)     Class 2 — Non-Lender Secured Claims.

In the sole discretion of the Liquidation Trustee, each holder of an Allowed Non-Lender Secured Claim against the Debtor shall be treated in one of the following ways (for the avoidance of doubt, holders of Allowed Non-Lender Secured Claims against the Debtor need not be treated in the same way as long as each is treated in one of the following ways): upon the later of thirty (30) days after (i) the Effective Date or (ii) the date on which Non-Lender Secured Claim becomes an Allowed Claim, or as soon thereafter as is practicable, each holder of an Allowed Other Secured Claim shall receive: (a) the net proceeds of the sale of the property securing such Allowed Non-Lender Secured Claim, up to the Allowed amount of such Allowed Non-Lender Secured Claim; or (b) the return of property securing such Allowed Non-Lender Secured Claim; or (c) Cash equal to the value of the property securing such Allowed Non-Lender Secured Claim, up to the value of the Allowed Non-Lender Secured Claim; provided, however, if a Final Order has been entered prior to the Effective Date providing for treatment and distributions on account of an Allowed Non-Lender Secured Claim, the Allowed Non-Lender Secured Claim shall be treated as set forth in such Final Order.

To the extent the collateral securing an Allowed Non-Lender Secured Claim has been or is sold pursuant to an Order of the Bankruptcy Court, the amount paid to the holder of such Allowed Non-Lender Secured Claim pursuant to the preceding paragraph shall be net of the costs of sale of such collateral and otherwise subject to the rights of the Debtor or the Liquidation Trustee pursuant to section 506(c) of the Bankruptcy Code.

The failure of any party to object to any Non-Lender Secured Claim in the Chapter 11 Case shall be without prejudice to the rights of the Debtor or the Liquidation Trustee to contest or otherwise defend against such Claim in the Bankruptcy Court when and if such Claim is sought to be enforced by the holder of such Claim.

(c)     Class 3 — Health Care Claims.

Each holder of a potentially allowable Health Care Claim will be provided a notice and a ballot by the Debtor providing them the option to "opt in" to treatment under this Class 3 or "opt out" of Class 3 and thereby automatically receive treatment under Class 4 as a General Unsecured Creditor. An election to not "opt in" to Class 3 shall be deemed an election to be included in Class 4.

Each holder of a potentially allowable Health Care Claim who elects to "opt in" to treatment under Class 3 shall be deemed to be granted an Allowed Health Care Claim of $10 solely for the purpose of voting to accept or reject the Joint Plan. The Allowed Health Care Claim of such holder for Plan Distribution purposes shall be determined in accordance with the process set forth in Article VIII below.

If such holder elects treatment under Class 3, such holder: will receive a Pro Rata Share of the Health Care Claims Fund (after accounting for payment of the costs of reconciliation of the Class 3 Claims from the Health Care Claims Fund) based upon the Allowed amount of such holder's Health Care Claim. The process for reconciling Class 3 Claims is set forth in Article VIII of this Joint Plan, and parties electing to receive treatment under Class 3 will be given an opportunity to file a new Claim to be reconciled as set forth therein.

By electing treatment under Class 3, each holder of a Health Care Claim thereby (i) waives and releases (other than its treatment and recovery in Class 3) against the Debtor's former employees and their family members any and all claims whatsoever related in any way to the services that form the basis of such Provider's Health Care Claims, whether such claims were originally the primary obligations of the Debtor or such former employees or family members, and (ii) agrees to contact any credit reporting agency to which the holder has reported the failure to pay the Health Care Claims to have that information removed from the credit report.

If a holder of a Health Care Claim elects to opt out of Class 3 and thereby receives treatment under Class 4, such holder shall not be allowed to file a new Claim and shall be subject to the General Bar Date. Such holder will be treated as a General Unsecured Creditor (a) provided its Health Care Claim was scheduled as an undisputed, liquidated, non-contingent Claim or such holder timely filed a proof of claim in accordance with the General Bar Date; and (b) subject to the applicable Claims objection procedures.

(d)     Class 4 — General Unsecured Claims Against the Debtor.

On one or more Plan Distribution Dates, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of the net proceeds of the Liquidation Trust Assets (other than the Health Care Claims Fund) after the payment of all Allowed Fee Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, and Non-Lender Secured Claims, and the payment of all costs and expenses of the Liquidation Trust, including costs of the Debtor Representative and the ASA Committee (as provided in Section 7.7).

(e)     Class 5 — Genesis Claims.

To the extent that all or part of the Genesis Claims are determined by a Final Order to be a General Unsecured Claim, then to the extent Allowed, Genesis shall receive the same treatment as holders of Class 4 General Unsecured Claims and the amount of the Allowed Genesis Claim shall be included in the numerator and denominator in calculating the Pro Rata Shares of Allowed General Unsecured Claims holders and Allowed Genesis Claim Holders. To the extent the Genesis Claims are determined by a Final Order to not be an Allowed General Unsecured Claim, the Genesis Claims shall be treated as set forth in such Final Order.

## ARTICLE IV
## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

### 4.1     Unimpaired Classes of Claims.

The following Classes are not impaired under this Joint Plan:

(a)     Class l — Priority Non-Tax Claims.

(b)     Class 2 — Non-Lender Secured Claims.

**4.2     Impaired Classes of Claims.**

The following Classes are impaired under this Joint Plan:

(a)     Class 3 – Health Care Claims.

(b)     Class 4 – General Unsecured Claims.

(c)     Class 5 – Genesis Claims.

**4.3     Impairment Controversies.**

If a controversy arises as to whether any Claim, or any Class of Claims, is impaired under this Joint Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

**ARTICLE V**
**ACCEPTANCE OR REJECTION OF THE JOINT PLAN;**
**EFFECT OF REJECTION BY ONE OR MORE**
**CLASSES OF CLAIMS**

**5.1     Classes Entitled to Vote.**

Classes l and 2 are not impaired under this Joint Plan, and the holders of Claims in such classes are conclusively presumed to have accepted this Joint Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject this Joint Plan.

Classes 3, 4, and 5 are impaired under this Joint Plan, and the holders of Claims in such classes are entitled to vote to accept or reject this Joint Plan.

**5.2     Acceptance by an Impaired Class of Claims.**

5.2.1    Pursuant to section 1126(c) of the Bankruptcy Code, an impaired Class of Claims shall have accepted this Joint Plan if, after excluding any Claims held by any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept such Joint Plan.

5.2.2    Except for holders of Claims in classes that are deemed or presumed to have accepted or rejected this Joint Plan pursuant to the terms of this Joint Plan other than this Section 5.2.2, **HOLDERS OF CLAIMS IN IMPAIRED CLASSES OF CLAIMS UNDER THIS JOINT PLAN ARE HEREBY GIVEN NOTICE THAT THE FAILURE OF ANY HOLDERS OF CLAIMS IN A GIVEN IMPAIRED CLASS OF CLAIMS TO VOTE OR**

**ACCEPT OR REJECT THIS JOINT PLAN WILL RESULT IN SUCH IMPAIRED CLASS BEING DEEMED TO HAVE ACCEPTED THIS JOINT PLAN**.

**5.3     Confirmability and Severability of this Joint Plan.**

5.3.1     <u>Cramdown.</u> If all applicable requirements for confirmation of this Joint Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, except subsection (8) thereof, then this Joint Plan shall be treated as a request that the Bankruptcy Court confirm this Joint Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that this Joint Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims that is impaired under, and has not accepted, this Joint Plan.

5.3.2     <u>Reservation of Rights.</u> Subject to Sections 15.10 and 15.11 of this Joint Plan, the Debtor and the Committee reserve the right to modify or withdraw this Joint Plan, in its entirety or in part, for any reason, including, without limitation, in the event that this Joint Plan as it applies to the Debtor is not confirmed. In addition, and also subject to Sections 15.10 and 15.11 of this Joint Plan, should this Joint Plan fail to be accepted by the requisite number and amount of Claims voting, as required to satisfy section 1129 of the Bankruptcy Code, and notwithstanding any other provision of this Plan to the contrary, the Debtor reserves the right to reclassify Claims or otherwise amend, modify or withdraw this Joint Plan in its entirety or in part.

5.3.3     <u>Severability of Plan Provisions.</u> If any term or provision of this Joint Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Joint Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Joint Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**ARTICLE VI**
**MEANS FOR IMPLEMENTATION OF THE JOINT PLAN**

**6.1     Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtor, the Liquidation Trustee, and the Debtor Representative, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, this Joint Plan and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, (a) the incurrence of all obligations contemplated by this Joint Plan and the making of Plan Distributions, (b) the implementation of all settlements

and compromises as set forth in or contemplated by this Joint Plan and (c) the execution, delivery, filing and/or recording of any contracts, agreements, instruments or other documents contemplated by the Plan Documents (or necessary or desirable to effectuate the transactions contemplated by the Plan Documents).

For the avoidance of doubt, on the Effective Date, the ASA Committee shall be authorized to take any and all actions set forth in Section 7.7 of this Joint Plan.

**6.2    Establishment of the Liquidation Trust and Appointment of the Liquidation Trustee**

The Liquidation Trust shall be established and the Liquidation Trustee shall be appointed as set forth below in Article VII.

**6.3    Appointment of the Debtor Representative, Vesting of Authority in the Debtor Representative, and Revesting of the Tort Claims and Insurance Policies**

On the Effective Date, a Debtor Representative shall be appointed pursuant to section 1123(b)(3) of the Bankruptcy Code.

On the Effective Date, the Debtor's board of trustees shall be dissolved and the then-current board members shall be relieved of their positions and corresponding duties and obligations and the Debtor's officers shall likewise be relieved of their positions and corresponding duties and obligations; provided, however, that the Debtor Representative shall be responsible for effectuating transfers of Assets in accordance with this Joint Plan and otherwise satisfying the Debtor's obligations under the terms of this Joint Plan, including making the transfers to fund the account for the Health Care Claims Fund, executing and delivering all agreements, documents, instruments, notices and certificates as are contemplated by this Joint Plan and taking all necessary actions required in connection therewith, in the name of and on behalf of the Debtor.

On the Effective Date, the Estate's interest in any Tort Claims and rights in and proceeds of any Insurance Policies necessary for the prosecution of all such Claims will revest in the Debtor. The Debtor Representative shall have standing and be authorized to institute and prosecute through final judgment or settle the Tort Claims without further approval of the Bankruptcy Court. Upon entry of a final judgment or settlement, the relevant proceeds of the Tort Claims and relevant Insurance Policies shall be transferred to the Liquidation Trust for the benefit of holders of Allowed claims in accordance with the provisions of this Joint Plan. **THIS JOINT PLAN SHALL BE INTERPRETED SO AS TO AFFORD, FOR THE BENEFIT OF ALL HOLDERS OF ALLOWED CLAIMS, THE GREATEST OPPORTUNITY FOR MAXIMUM RECOVERY BY THE LIQUIDATION TRUSTEE AND THE DEBTOR REPRESENTATIVE ON THE ASSETS, INCLUDING THE TORT CLAIMS, AND RIGHTS IN AND PROCEEDS OF ANY INSURANCE POLICIES.**

After the Tort Claims are liquidated, the proceeds of Tort Claims are transferred to the Liquidation Trust in accordance with this Joint Plan, and all other assets of the Liquidation Trust are administered, the Debtor Representative shall be empowered, but not directed, to effectuate

the dissolution of the Debtor in accordance with any applicable state law and without further approval of the Bankruptcy Court.

**6.4    Sources of Cash for Plan Distributions.**

All Cash necessary to make payments and Plan Distributions under this Joint Plan shall be obtained from the liquidation of Liquidation Trust Assets (including the proceeds of any Tort Claims and related Insurance Policies).

**6.5    Use of Existing Accounts.**

The Liquidation Trustee may use the Debtor's existing bank accounts (as of the Effective Date) for the purposes set forth in this Joint Plan to the extent possible and desired. The Liquidation Trustee may also close the Debtor's existing bank accounts at his discretion and transfer all amounts therein to one or more accounts in accordance with the terms of this Joint Plan.

**6.6    Cancellation of Instruments.**

Except as otherwise provided herein, all notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be deemed cancelled on the Effective Date to the extent not previously cancelled.

**6.7    Dissolution of the Committee.**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee.

**6.8    Utility Deposits.**

To the extent not otherwise provided in the Asset Sale Agreement, all utilities holding a Utility Deposit shall immediately after the Effective Date return or refund such Utility Deposit to the Liquidation Trust.  At the sole option of the Liquidation Trustee, the Liquidation Trust may apply any Utility Deposit that has not been refunded to the Liquidation Trustee in satisfaction of any payments due or to become due from the Liquidation Trust to a utility holding such a Utility Deposit.

**6.9    Restricted Funds.**

On the Effective Date, all Restricted Funds (if any) shall revest in the Debtor until such Restricted Funds are transferred pursuant to this Section 6.9.  The Debtor, or after the Effective Date the Liquidation Trustee or Debtor Representative, as applicable, shall provide for the appropriate transfer to a non-profit entity of Restricted Funds in the Debtor's possession, if any.

# ARTICLE VII
## THE LIQUIDATION TRUST

### 7.1 Establishment of Liquidation Trust.

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purposes of administering the Liquidation Trust Assets and making all distributions to Liquidation Trust Beneficiaries as provided for under this Joint Plan. The Liquidation Trust Agreement shall be substantially in the form provided in the Plan Documents.

The beneficial interests in the Liquidation Trust shall not be certificated, unless otherwise provided in the Liquidation Trust Agreement. The issuance of any beneficial interests of the Liquidation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

### 7.2 Execution of the Liquidation Trust Agreement.

The Liquidation Trust Agreement, in a form reasonably acceptable to the Debtor and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Liquidation Trust and the beneficial interests therein, which shall be for the benefit of holders of Allowed Claims as set forth herein. This Article VII sets forth certain of the rights, duties and obligations of the Liquidation Trustee. In the event of any conflict between the terms of this Joint Plan and the terms of the Liquidation Trust Agreement, the terms of this Joint Plan shall govern.

### 7.3 Liquidation Trust Assets.

7.3.1    On the Effective Date, in accordance with section 1141 of the Bankruptcy Code, all of the Liquidation Trust Assets (except the Tort Claims and proceeds of related Insurance Policies, which shall revert in the Debtor), as well as the rights, privileges (including but not limited to the attorney-client privilege), and powers of the Debtor and its Estate applicable to the Liquidation Trust Assets (except those applicable to the Tort Claims and proceeds of related Insurance Policies, which shall be transferred to the Liquidation Trust upon the entry of a final judgment or settlement), shall automatically vest in the Liquidation Trust, free and clear of all Claims for the benefit of the Liquidation Trust Beneficiaries. For the avoidance of doubt, (i) in no event shall the term "Liquidation Trust Assets" be deemed to include any released claims against any Released Parties, and (ii) the Liquidation Trust shall not have the right to assert any released claims against any Released Parties. Upon the transfer of Liquidation Trust Assets to the Liquidation Trust, the Liquidation Trust shall succeed to all of the Debtor's and Estate's rights, title and interest in such Liquidation Trust Assets, and the Debtor shall have no further interest in or with respect to such Liquidation Trust Assets.

Notwithstanding the foregoing, the Debtor reserves the right to modify this Joint Plan to exclude certain assets from transfer to the Liquidation Trust. The Confirmation Order shall constitute a determination that the transfers of Assets to the Liquidation Trust are legal and valid and consistent with the laws of the State of Ohio.

All parties shall execute any documents or other instruments necessary to cause title to the Assets to be transferred to the Liquidation Trust. The Assets shall be held in trust for the benefit of all holders of Allowed Claims pursuant to the terms of this Joint Plan and Liquidation Trust Agreement.

7.3.2    The transfer of each of the Liquidation Trust Assets to the Liquidation Trust shall be treated for U.S. federal income tax purposes as a transfer of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Liquidation Trust.

7.3.3    The interests of the Liquidation Trust Beneficiaries in the Liquidation Trust are not negotiable and shall not be transferable except after written notice to the Liquidation Trustee and only: (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Liquidation Trust Beneficiary), or (b) by operation of law.

## 7.4    Governance of Liquidation Trust.

The Liquidation Trust shall be governed and administered by the Liquidation Trustee, as provided under this Joint Plan and the Liquidation Trust Agreement, subject to Section 7.6 hereof.

## 7.5    Liquidation Trustee.

The Liquidation Trustee shall be authorized to exercise and perform the rights, powers, and duties held by the Debtor and the Estate with respect to the Liquidation Trust Assets upon the establishment of the Liquidation Trust, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee or any similar official who has been appointed to take control of, supervise, manage or liquidate the Debtor and its Estate, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets. For the avoidance of doubt, the authority conferred upon the Liquidation Trustee pursuant to this Section 7.5 shall be conferred upon the Debtor Representative with respect to any Assets that revest in the Debtor on the Effective Date until such Assets or proceeds thereof vest in the Liquidation Trust.

7.5.1    Responsibilities of Liquidation Trustee.

Except as otherwise set forth in this Joint Plan, the responsibilities of the Liquidation Trustee shall include, but shall not be limited to: (a) prosecuting through judgment and/or settling the Liquidation Trust Assets and any defense asserted by the Liquidation Trust in connection with any counterclaim or crossclaim asserted against the Liquidation Trust; (b) calculating and making distributions required under this Joint Plan to be made from the Liquidation Trust Assets; (c) filing all required tax returns, and paying obligations on behalf of the Liquidation Trust from the Liquidation Trust Assets; (d) otherwise administering the Liquidation Trust; (e) filing quarterly reports with the Bankruptcy Court with respect to the expenditures, receipts, and distributions of the Liquidation Trust; (f) paying from Liquidation Trust Assets the reasonable fees and costs of the Liquidation Trust, the Debtor Representative, and the ASA Committee (as provided in Section 7.7); and (g) such other responsibilities as may

16-51552-amk    Doc 405    FILED 05/22/17    ENTERED 05/22/17 17:52:40    Page 30 of 54

be vested in the Liquidation Trustee pursuant to the Liquidation Trust Agreement, the Confirmation Order, or as may be necessary and proper to carry out the provisions of this Joint Plan relating to the Liquidation Trust.

The Liquidation Trustee shall maintain good and sufficient books and records of account relating to the Liquidation Trust Assets, the management thereof, all transactions undertaken by the Liquidation Trustee, all expenses incurred by or on behalf of the Liquidation Trustee, and all distributions to Liquidation Trust Beneficiaries contemplated or effectuated under this Joint Plan. In addition, the Liquidation Trustee shall maintain any of the Debtor's organizational or corporate record books, minute books and tax records not sold to the Buyer under the Asset Sale Agreement (the "Retained Records") until the dissolution of the Liquidation Trust, at which time the Retained Records may be disposed of in the Liquidation Trustee's discretion.

### 7.5.2 Authority and Powers of Liquidation Trustee.

The powers of the Liquidation Trustee are set forth in full in the Liquidation Trust Agreement and shall include, among other things, the right, without any further notice or approval from the Bankruptcy Court, to: (a) sell, lease, license, abandon or otherwise dispose of all Liquidation Trust Assets subject to the terms of this Joint Plan; (b) invest the Liquidation Trust Assets in short term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills, and withdraw funds of the Liquidation Trust; (c) employ Persons to assist the Liquidation Trustee or the Debtor Representative in carrying out his duties under this Joint Plan and Liquidation Trust Agreement; (d) pay from the Liquidation Trust Assets all obligations of the Liquidation Trust and all costs and expenses of administering the Liquidation Trust and Liquidation Trust Assets, including fees and expenses of the Liquidation Trustee, the Debtor Representative, the ASA Committee (as provided in Section 7.7), and Persons employed by the Liquidation Trustee, the Debtor Representative or the Oversight Committee (as provided in Section 7.6) in carrying out their duties under this Joint Plan and Liquidation Trust Agreement, taxes, and other obligations of the Liquidation Trust; (e) implement this Joint Plan, including by making distributions pursuant to this Plan; (f) evaluate and determine strategy with respect to the Liquidation Trust Assets, and prosecute, compromise, release, abandon and/or settle or otherwise resolve any Liquidation Trust Assets, including any and all Avoidance Actions, Causes of Action, or other claims of the Debtor or its Estate except Tort Claims, which shall revest in the Debtor; (g) liquidate any Liquidation Trust Assets and provide for distributions therefrom in accordance with the provisions of this Joint Plan; (h) otherwise administer the Liquidation Trust; (i) participate in any post-Effective Date motions to amend or modify this Joint Plan or the Liquidation Trust Agreement, or appeals from the Confirmation Order; (j) participate in actions to enforce or interpret this Joint Plan; (k) bind the Liquidation Trust; (l) continue any motions, defenses, or appeals initiated by the Committee (or by the Debtor other than with respect to Tort Claims) prior to the Effective Date; (m) exercise such other powers and authority as may be vested in or assumed by the Liquidation Trustee by any Final Order, or as may be necessary and proper to carry out the provisions of this Joint Plan relating to the Liquidation Trust; and (n) administer the closure of the Chapter 11 Case.

The authority of the Liquidation Trustee shall commence as of the Effective Date and shall remain and continue in full force and effect until all of the Assets have been liquidated in accordance with this Joint Plan, the funds in the Liquidation Trust have been completely

distributed in accordance with this Joint Plan, including funds received from the Debtor Representative, all tax returns and any other required filings or reports have been filed with the appropriate state or federal regulatory authorities, and the Order closing the Chapter 11 Case is a Final Order.

7.5.3    Liquidation Trustee as Successor in Interest to the Debtor and Committee.

Except as to the Tort Claims, the Liquidation Trustee is the successor in interest to the Debtor and the Committee, and thus, after the Effective Date, to the extent this Joint Plan requires an action by the Debtor (and except as it relates to the Tort Claims), the action shall be taken by the Liquidation Trustee on behalf of the Debtor or the Committee, as applicable.

7.5.4    Retention of Professionals by Liquidation Trustee.

As set forth in Section 7.5.2 of this Joint Plan and the Liquidation Trust Agreement, the Liquidation Trustee may, without notice and further order of the Bankruptcy Court, employ various Persons on behalf of the Liquidation Trust and Debtor Representative, including, but not limited to, attorneys, consultants and financial advisors, as needed to assist him/her in fulfilling his/her obligations under the Liquidation Trust Agreement and this Joint Plan, and on whatever fee arrangement he/she deems appropriate, including, without limitation, contingency fee arrangements.  For the avoidance of doubt, the Liquidation Trustee may retain professionals who represented parties in interest in the Chapter 11 Case. Professionals engaged by the Liquidation Trustee shall not be required to file applications with the Bankruptcy Court in order to receive compensation for services rendered and reimbursement of actual out-of-pocket expenses incurred. All such compensation and reimbursement shall be paid from the Liquidation Trust with Liquidation Trust Assets.

7.5.5    Compensation of Liquidation Trustee.

In addition to reimbursement for actual out-of-pocket expenses incurred by the Liquidation Trustee, the Liquidation Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidation Trust on terms to be set forth in the Liquidation Trust Agreement, without notice and further order of the Bankruptcy Court. All such compensation and reimbursement shall be paid from the Liquidation Trust with Liquidation Trust Assets. Like terms shall apply to the fees and expenses of the Debtor Representative.

**7.6    Oversight Committee**

On the Effective Date, the Oversight Committee shall be formed.  The Oversight Committee shall advise and assist the Liquidation Trustee in the implementation and administration of the Liquidation Trust pursuant to the Liquidation Trust Agreement and this Joint Plan.  A list of the proposed members of the Oversight Committee, whose appointment shall become effective as of the Effective Date of this Joint Plan, shall be filed with the Bankruptcy Court as a Plan Document.

The Oversight Committee shall consist of one or more Persons that are Liquidation Trust Beneficiaries.  The Oversight Committee may also include such other Persons (including ex officio members) as may be requested by the Oversight Committee, which Person shall have

agreed to participate in the performance of the Oversight Committee's functions as set forth in the Joint Plan. The members of the Oversight Committee shall serve without compensation, but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the Oversight Committee.

The Oversight Committee shall have the functions, duties and rights provided in the Liquidation Trust Agreement. No other Liquidation Trust Beneficiary shall have any consultation rights whatsoever with respect to the management and operation of the Liquidation Trust.

### 7.7    ASA Committee.

On the Effective Date, the ASA Committee shall be formed. The role of the ASA Committee shall be to monitor and enforce (at its option and in its discretion) the Buyer's post-closing obligations under the Asset Sale Agreement related to the continued operation of a full service hospital in Coshocton County, Ohio with certain lines of service, specifically the obligations of the Buyer under Sections 4.8, 4.9, 4.10, and 4.11 of the Asset Sale Agreement. The Liquidation Trustee shall reserve the amount of $50,000 for this purpose to be used in the reasonable discretion of the ASA Committee, which may hire counsel to assist in its duties. The ASA Committee shall be entitled to the same indemnification rights as the Liquidation Trustee. A list of the proposed members of the ASA Committee, whose appointment shall become effective as of the Effective Date of this Joint Plan, shall be filed with the Bankruptcy Court as a Plan Document. The members of the ASA Committee shall serve without compensation, but may be reimbursed for reasonable expenses incurred in the performance of their duties as members of the ASA Committee subject to the reserve amount set forth in this Section 7.7. To the extent the reserve provided for in this Section 7.7, or any portion thereof, is not utilized on or before the earlier of (i) the date on which the ASA Committee determines it is not necessary to continue to use the reserve to monitor and enforce the Buyer's post-closing obligations under the Asset Sale Agreement or (ii) the fifth anniversary of the Effective Date, such reserve (or portion thereof) shall be made available for distribution from the Liquidation Trust in accordance with the provisions of this Joint Plan.

### 7.8    Indemnification.

From and after the Effective Date, the Liquidation Trustee, the Debtor Representative, the members of the ASA Committee and the all Persons retained by the Liquidation Trust, the Debtor Representative, or the members of the Oversight Committee (collectively, the "Liquidation Trust Indemnified Parties" and each a "Liquidation Trust Indemnified Party") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees, defense costs, and other assertions of liability arising out of any such Liquidation Trust Indemnified Party's good faith exercise of what such Liquidation Trust Indemnified Party reasonably understands to be its powers or the discharge of what such Liquidation Trust Indemnified Party reasonably understands to be its duties conferred by the Liquidation Trust Agreement, this Joint Plan, or any order of the Bankruptcy Court entered pursuant to, or in furtherance of, this Joint Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined

by a Final Order to be due to its own fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing the Liquidation Trust Assets, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly in connection with, arising out of, based on, or in any way related to (a) this Joint Plan; (b) the Liquidation Trust Agreement; (c) the services to be rendered pursuant to this Joint Plan or Liquidation Trust Agreement; (d) any document or information, whether verbal or written, referred to herein or supplied to the relevant Liquidation Trust Indemnified Person; or (e) proceedings by or on behalf of any creditor or Debtor. The Liquidation Trust shall, on demand, advance or pay promptly out of the Liquidation Trust Assets, on behalf of each Liquidation Trust Indemnified Party, reasonable and documented attorneys' fees and other expenses and disbursements to which such Liquidation Trust Indemnified Party would be entitled pursuant to the foregoing indemnification obligation; provided, however, that any Liquidation Trust Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance if a court of competent jurisdiction ultimately determines that such Liquidation Trust Indemnified Party is not entitled to indemnification hereunder due to the fraud, self-dealing, intentional misrepresentation, gross negligence or willful misconduct of such Liquidation Trust Indemnified Party. In any matter covered by the first two sentences of this subsection, any Person entitled to indemnification shall have the right to employ such Person's own separate counsel reasonably acceptable to the Liquidation Trustee, at the Liquidation Trust's expense, subject to the foregoing terms and conditions.

**7.9    LT Reserves.**

The Liquidation Trustee may establish one or more LT Reserves on account of Contested Claims, the holders of which would be Liquidation Trust Beneficiaries were such Contested Claims ultimately Allowed.  The amount held back in the LT Reserve(s) shall be equal to the amount necessary to satisfy the Plan Distributions to which the holders of the relevant Contested Claims would be entitled if all such Contested Claims were to be subsequently Allowed.

For the avoidance of doubt, until the treatment of the Genesis Claims is determined by a Final Order or otherwise resolved by the Liquidation Trustee and Genesis under the Joint Plan, the Liquidation Trustee shall reserve funds as if the Genesis Claims were Allowed General Unsecured Claims in Class 4.

Upon the allowance or disallowance of any Contested Claim, any portion of the Liquidation Trust Assets reserved for such Claim that are not required for distribution to the holder of such Claim in light of such allowance or disallowance shall be made available for distribution from the Liquidation Trust in accordance with the provisions of this Joint Plan.

**7.10    Discharge of Liquidation Trustee and Dissolution.**

The Liquidation Trustee and the Liquidation Trust shall be discharged or terminated, as the case may be, at such time as (i) all assets of the Liquidation Trust have been liquidated and (ii) all distributions required to be made by the Liquidation Trustee under this Joint Plan have been made, but in no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Liquidation Trust for a finite period if (i) such extension is

necessary to the purpose of the Liquidation Trust, (ii) an opinion of counsel or a ruling from the IRS stating that such extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes, and (iii) such extension is obtained within the six (6) month period prior to the Liquidation Trust's fifth (5th) anniversary or the end of the immediately preceding extension period, as applicable. Upon dissolution of the Liquidation Trust, any remaining Cash on hand and other assets, with the exception of any Causes of Action, shall be distributed to the Liquidation Trust Beneficiaries in accordance with the Liquidation Trust Agreement. Upon the dissolution of the Liquidation Trust, all remaining Causes of Action shall be deemed void and abandoned and no Liquidation Trust Beneficiary shall have any right, title or interest in or to any such Cause of Action.

At such time as the Liquidation Trust has been fully administered (i.e., when all things requiring action by the Liquidation Trustee — including the liquidation of all Liquidation Trust assets and the making of all distributions required under this Joint Plan — have been done, and this Joint Plan has been substantially consummated), the Liquidation Trustee shall file an application for approval of his final report and the entry of a final decree with the Bankruptcy Court; provided, however, that nothing herein shall prohibit the Liquidation Trustee from seeking an entry of a final decree at any time consistent with the terms of this Joint Plan and the Bankruptcy Code.

## 7.11 <u>Taxes.</u>

For federal income tax purposes, (i) all parties (including, without limitation, the Debtor, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the Liquidation Trust as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, (ii) the transfer of Assets of the Debtor to the Liquidation Trust under this Joint Plan shall be treated as a deemed transfer to the Liquidation Trust Beneficiaries in satisfaction of their Claims followed by a deemed transfer of the Assets by the Liquidation Trust Beneficiaries to the Liquidation Trust, (iii) the Liquidation Trust Beneficiaries shall be deemed to be the grantors and owners of the Liquidation Trust and its assets, and (iv) the Liquidation Trust shall be taxed as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code owned by the Liquidation Trust Beneficiaries. The Liquidation Trust shall file federal income tax returns as a grantor trust under Internal Revenue Code section 671 and Treasury Regulation section 1.671-4 and report, but not pay tax on, the Liquidation Trust's tax items of income, gain, loss deductions and credits ("Tax Items"). The Liquidation Trust Beneficiaries shall report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability. All parties shall use consistent valuations of the Assets transferred to the Liquidation Trust for all federal income tax purposes. The Assets shall be valued based on the Liquidation Trustee's good faith determination of their fair market value.

The Liquidation Trustee may, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), (i) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the LT Reserve(s) as a "disputed ownership fund" within the meaning of that section, (ii) allocate taxable income or loss to the LT Reserve(s), with respect to any given taxable year (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims), and (iii) distribute assets from the LT Reserve(s) as,

when, and to the extent, such Disputed Claims either become Allowed or are otherwise resolved. The Liquidation Trust Beneficiaries shall be bound by such election, if made by the Liquidation Trustee, in consultation with the Oversight Committee, and as such shall, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

For federal and applicable state income tax purposes, all parties (including, without limitation, the Debtor, the Liquidation Trustee, and the Liquidation Trust Beneficiaries) shall treat the transfers of Assets to the Liquidation Trust in accordance with the terms of this Joint Plan as a sale by the Debtor and/or its Estate of such Assets to the Liquidation Trust at a selling price equal to the fair market value of such Assets on the date of transfer. The Liquidation Trust shall be treated as the owner of all Assets that it holds.

## ARTICLE VIII
## HEALTH CARE CLAIMS PROCESS

The following process shall apply to the adjudication and treatment of Health Care Claims of the Providers who have elected to opt into Class 3:

(a)     Within thirty (30) days after the Effective Date (which time may be extended by the Liquidation Trustee in good faith), the Liquidation Trustee shall send a notice (a "Health Care Claim Notice") to each known Provider or prepetition services under the Health Care Plan who elected to opt into treatment under Class 3.

(b)     The Health Care Claim Notice shall advise each Provider who elected to be treated under Class 3 that they are required to submit a new Claim pursuant to procedures set forth in the Health Care Claims Notice setting forth the services provided, the date(s) of service, and the amount(s) claimed (an "HC Gross Claim") by a set deadline, which shall not be earlier than 30 days from the date of the notice (the "HC Claim Deadline").

(c)     The Liquidation Trustee shall conduct a review of all HC Gross Claims and shall negotiate or resolve any HC Gross Claim disputes within one hundred twenty (120) days after the expiration of the HC Claim Deadline (the "Claims Evaluation Period").

(d)     If any disputes as to the amount of a HC Gross Claim cannot be resolved within the time period set forth in Article VIII(c) above, the Liquidation Trustee will file an objection (which may be an omnibus objection for multiple claims) with the Bankruptcy Court.

(e)     Upon reconciliation of the Claims in Class 3 (the cost of which reconciliation shall be paid from the Health Care Claims Fund), the Liquidation Trustee will distribute Pro Rata Shares of the Health Care Claims Fund to holders of Allowed Class 3 Claims.

(f)     If any Provider who elected treatment under Class 3 had previously filed a proof of claim in the Debtor's chapter 11 case relating to any outstanding Health Care Claims, such proof of claim shall be deemed withdrawn upon the receipt of the Pro Rata Share and expunged from the Debtor's claims register.

(g)     If Allowed Class 3 Claims are paid in full and the entire Health Care Claims Fund is not exhausted, the remaining amount of the Health Care Claims Fund will be included in the assets distributed to Class 4.

**ARTICLE IX**
**INJUNCTIONS, RELEASES AND EXCULPATION**

**9.1     Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, except for any injunction in the Prime Sale Order, which shall remain in full and force and effect until then and at all times after the Effective Date, and any stay related to Health Care Claims, which shall remain in full force and effect until its expiration pursuant to the Order setting it.

Except as otherwise provided in this Joint Plan or the Confirmation Order, or to the extent necessary to enforce the terms and conditions of this Joint Plan, the Confirmation Order, or a separate Order of the Bankruptcy Court, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against in the Debtor or the Estate are, with respect to any such Claims, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, the Estate or any of its Assets, the Liquidation Trustee, the Debtor Representative, the ASA Committee, the Oversight Committee, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate or any of its Assets, the Liquidation Trustee, the Debtor Representative, the ASA Committee, the Oversight Committee, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor, the Estate or any of its Assets, the Liquidation Trustee, the Debtor Representative, the ASA Committee, the Oversight Committee, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) commencing or continuing in any manner or in any place, any suit, action or other proceeding on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, satisfied, or otherwise addressed pursuant to this Joint Plan or the Confirmation Order, including, but not limited to, through the releases and exculpations provided under this Joint Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to Joint or comply with the provisions of this Joint Plan to the fullest extent permitted by applicable law; and (vi) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Joint Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Joint

Plan. Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.

The foregoing injunctions shall extend for the benefit of the Debtor Representative, the Liquidation Trustee, the ASA Committee and any successors of the Debtor, and to any property and interest in property subject to this Joint Plan.

**9.2    Releases by the Debtor.**

Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, including the obligations of the Debtor under this Joint Plan and the contributions of the Released Parties to facilitate and implement this Joint Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, this Joint Plan or the Disclosure Statement, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in this Joint Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims before or during the Chapter 11 Case, the negotiation, formulation or preparation of this Joint Plan, the Liquidation Trust Agreement, the solicitation of votes with respect to this Joint Plan, or any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date; except that nothing in this section shall be construed to release any party or entity from any losses which are finally judicially determined to have resulted primarily and directly from such party or entity's willful misconduct, gross negligence, or intentional fraud as determined by a Final Order.

**9.3    Releases by Creditors.**

**ON THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED HEREIN AND EXCEPT FOR THE RIGHT TO ENFORCE THIS JOINT PLAN, ALL PERSONS WHO (I) (A) HAVE VOTED TO ACCEPT THIS JOINT PLAN OR WHO ARE PRESUMED OR DEEMED TO HAVE VOTED TO ACCEPT THIS JOINT PLAN UNDER SECTION 1126(F) OF THE BANKRUPTCY CODE, (B) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THIS JOINT PLAN AND WHO VOTE TO REJECT THIS JOINT PLAN OR ABSTAIN FROM VOTING, OR (C) ARE DEEMED TO HAVE ACCEPTED OR REJECTED THIS JOINT PLAN UNDER SECTION 1126(G) OF THE BANKRUPTCY CODE, AND (II) DO NOT MARK THEIR BALLOTS AS OPTING OUT OR OTHERWISE OPT OUT OF THE RELEASES GRANTED UNDER THIS SECTION OR OPT OUT IN WRITING BY THE DEADLINE TO VOTE TO ACCEPT OR REJECT THIS JOINT PLAN, AS APPLICABLE, SHALL, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE THE RELEASED PARTIES**

OF AND FROM ALL LIENS, CLAIMS, CAUSES OF ACTION, LIABILITIES, ENCUMBRANCES, SECURITY INTERESTS, INTERESTS OR CHARGES OF ANY NATURE OR DESCRIPTION WHATSOEVER RELATING TO THE DEBTOR, THE CHAPTER 11 CASE OR AFFECTING PROPERTY OF THE ESTATE, WHETHER KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, SCHEDULED OR UNSCHEDULED, CONTINGENT OR NOT CONTINGENT, UNLIQUIDATED OR FIXED, ADMITTED OR DISPUTED, MATURED OR UNMATURED, SENIOR OR SUBORDINATED, WHETHER ASSERTABLE DIRECTLY OR DERIVATIVELY BY, THROUGH, OR RELATED TO THE DEBTOR, AGAINST SUCCESSORS OR ASSIGNS OF THE DEBTOR AND THE INDIVIDUAL AND ENTITIES LISTED ABOVE, WHETHER AT LAW, IN EQUITY, OR OTHERWISE, BASED UPON ANY CONDITION, EVENT, ACT, OMISSION, OCCURRENCE, TRANSACTION, OR OTHER ACTIVITY, INACTIVITY, INSTRUMENT OR OTHER AGREEMENT OF ANY KIND OR NATURE OCCURRING, ARISING, OR EXISTING PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO OR ARISING OUT OF, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THIS JOINT PLAN, THE NEGOTIATION AND CONSUMMATION OF THE SALE, THE CONSUMMATION OF THIS JOINT PLAN, OR THE ADMINISTRATION OF THIS JOINT PLAN, INCLUDING, WITHOUT LIMITATION, THE NEGOTIATION AND SOLICITATION OF THIS JOINT PLAN, ALL REGARDLESS OF WHETHER (A) A PROOF OF CLAIM HAS BEEN FILED OR IS DEEMED TO HAVE BEEN FILED, (B) SUCH CLAIM IS ALLOWED, OR (C) THE HOLDER OF SUCH CLAIM HAS VOTED TO ACCEPT OR REJECT THIS JOINT PLAN, EXCEPT FOR WILLFUL MISCONDUCT, GROSS NEGLIGENCE, OR INTENTIONAL FRAUD. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED IN THIS PARAGRAPH SHALL IMPACT THE RIGHT OF ANY HOLDER OF AN ALLOWED CLAIM TO RECEIVE A DISTRIBUTION ON ACCOUNT OF ITS ALLOWED CLAIM IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS JOINT PLAN.

9.4     <u>Injunction.</u>

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATIONS GRANTED IN THIS JOINT PLAN, ALL PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THE EXCULPATED PARTIES, AS APPLICABLE, AND THEIR RESPECTIVE ASSETS AND PROPERTIES, ANY SUIT, ACTION, OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS JOINT PLAN.

9.5     <u>Exculpation.</u>

No Exculpated Party shall have or incur, and, each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action or liability for any claim in connection with or arising out of, the administration of the Chapter 11 Case, the entry into the

DIP Documents and the DIP Facility, entry into the Liquidation Trust Agreement, the Debtor's entry into the Asset Sale Agreement during the Chapter 11 Case, the consummation of any transactions contemplated therein, the negotiation and pursuit of this Joint Plan, or the solicitation of votes for, or confirmation of, this Joint Plan, the funding of this Joint Plan, the consummation of this Joint Plan, or the administration of this Joint Plan or the property to be distributed under this Joint Plan, and the issuance of securities under or in connection with this Joint Plan or the transactions contemplated by the foregoing, except for willful misconduct, gross negligence, or intentional fraud as finally determined by the Bankruptcy Court, but in all respects such Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities pursuant to this Joint Plan. The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of any securities pursuant to this Joint Plan, and are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Joint Plan or such distributions made pursuant to this Joint Plan, including the issuance of securities thereunder. For the avoidance of doubt, nothing in this Section 9.5 shall operate to exculpate or release any Exculpated Party from any claim, obligation, Cause of Action or liability that is released pursuant to Sections 9.2 and/or 9.3 or enjoined pursuant to Section 9.4 of this Joint Plan, unless such Exculpated Party is a Released Party.

**9.6**    **Limitation on Liability of Liquidation Trustee, Debtor Representative, the Oversight Committee and ASA Committee.**

None of the Liquidation Trustee, the Debtor Representative, the Oversight Committee or the ASA Committee members shall be liable for any act he may do or omit to do as Liquidation Trustee or Debtor Representative or Oversight Committee member or ASA Committee member under this Joint Plan and the Liquidation Trust Agreement, as applicable, while acting in good faith and in the exercise of his or their reasonable business judgment; nor shall the Liquidation Trustee, the Debtor Representative, any Oversight Committee member, or any ASA Committee member be liable in any event except for willful misconduct, gross negligence, or intentional fraud. The foregoing limitation on liability shall also apply to any Person (including any professional) employed by the Liquidation Trustee (including on behalf of the Debtor Representative, the Oversight Committee or the ASA Committee) and acting on behalf of the Liquidation Trustee, the Debtor Representative, the Oversight Committee or the ASA Committee in the fulfillment of their respective duties hereunder or under the Liquidation Trust Agreement.

**ARTICLE X**
**PLAN DISTRIBUTION PROVISIONS**

**10.1**    **Plan Distributions.**

The Liquidation Trustee shall make all Plan Distributions in accordance with this Joint Plan and the Liquidation Trust Agreement. In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due. For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan

Distribution shall be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest and other fees, premiums and charges, as applicable. Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent as of the Effective Date. The Liquidation Trustee and its agents shall have no obligation to recognize any transfer of a Claim after the Effective Date.

**NO DISTRIBUTION SHALL BE MADE PURSUANT TO THIS JOINT PLAN TO A HOLDER OF A CLAIM UNLESS AND UNTIL SUCH CLAIM IS OR BECOMES AN ALLOWED CLAIM.**

**10.2     Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**10.3     Delivery of Plan Distributions and Undeliverable or Unclaimed Distributions.**

10.3.1 <u>Delivery of Plan Distributions in General.</u> Subject to Bankruptcy Rule 9010, any Plan Distribution to a holder of an Allowed Claim shall be made at the last known address of such holder as set forth (i) in the Schedules, (ii) on the proof of Claim filed by such holder, (iii) in any notice of transfer of claim filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), (iv) in any notice served by such holder giving details of a change of address; or (v) for Class 3 Claims, in the Claim filed in response to the Health Care Claim Notice.

10.3.2  Undeliverable and Unclaimed Plan Distributions.

(a)      <u>General.</u>  The Liquidation Trustee shall have no duty to make distributions to any holder of an Allowed Claim with an undeliverable address as determined by any undeliverable or returned notice to the Liquidation Trustee unless and until the Liquidation Trustee is notified in writing of such holder's then-current address prior the Plan Distribution Date. If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or is otherwise unclaimed, no further Plan Distribution shall be made to such holder unless the Liquidation Trustee is notified of such holder's then-current address within ninety (90) days after such Plan Distribution was returned. After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the other holders of Allowed Claims in such holder's Class shall receive a Pro Rata Share of such undeliverable or unclaimed Plan Distribution, free of any restrictions thereon.

(b)      <u>Non-Negotiated Checks.</u> Checks issued in respect of Allowed Claims shall be null and void if not presented within ninety (90) days after the date of issuance thereof. Requests for reissuance of any voided check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim to whom such check was originally issued. Any claim in respect of such a voided check shall be made within ninety (90) days after

16-51552-amk     Doc 405     FILED 05/22/17     ENTERED 05/22/17 17:52:40     Page 41 of 54

the date of issuance of such check. If no request is made as provided in the preceding sentence, any claim in respect of such voided check shall be discharged and forever barred and the other holders of Allowed Claims in such holder's Class shall receive a Pro Rata Share of such undeliverable Plan Distribution, free of any restrictions thereon.

**10.4    Manner of Payment under this Joint Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under this Joint Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**10.5    Minimum Distributions.**

If the amount of Cash to be distributed to the holder of an Allowed Claim is less than twenty-five dollars ($25) on a Plan Distribution Date, the Liquidation Trustee may hold the Cash distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $25. Notwithstanding the preceding sentence, if the amount of Cash distribution to any holder of an Allowed Claim never aggregates more than $25, then the Liquidation Trustee shall not be required to distribute Cash to any such holder, and the resultant savings shall be distributed Pro Rata to other holders of Allowed Claims.

**10.6    Rounding.**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**10.7    Settlement of Claims and Controversies.**

Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Joint Plan, the provisions of this Joint Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal and subordination rights that a holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate and holders of Claims and is fair, equitable and reasonable.

**10.8    Setoffs and Recoupments.**

The Liquidation Trustee may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, exercise the right of setoff or recoupment against any Allowed Claim and the distributions to be made pursuant to this Joint Plan on account of such Claim (before distribution is made on account of such Claim) of the claims, rights and causes of action

of any nature that the Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights and causes of action that the Liquidation Trust may possess against such holder.

**10.9    Claims Paid or Payable by Third Parties.**

(a)    Claims Paid by Third Parties

The Debtor or Liquidation Trustee shall reduce a Claim, and such Claim shall be Disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. To the extent a holder of a Claim receives a distribution on account of such Claim and also receives payment from a party that is not a Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the Liquidation Trust to the extent the holder's total recovery on account of such Claim from the third party and under this Joint Plan exceeds the Allowed amount of such Claim.

(b)    Claims Payable by Third Parties

No distributions under this Joint Plan shall be made on account of an Allowed Claim that is payable by a third party, including pursuant to one of the Debtor's Insurance Policies, until the holder of such Allowed Claim has exhausted all remedies with respect to such third party or Insurance Policy. To the extent that one or more of the Debtor's insurers or another third party agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Court.

**ARTICLE XI**
**PROCEDURES FOR RESOLVING**
**AND TREATING CONTESTED CLAIMS**

**11.1    Claim Objection Deadline.**

Objections to Claims shall be filed by the Liquidation Trustee with the Bankruptcy Court and served upon the holders of each of the Claims to which objection is made within 180 days after the Effective Date of this Joint Plan. The time period for filing objections to Claims shall automatically renew for successive periods of 180 days each until the earlier of (i) the date upon which all Claims have been Allowed or Disallowed or (ii) the date fixed by the Court upon motion of the Liquidation Trustee or a holder of a Claim.

**11.2    Prosecution of Contested Claims.**

After the Effective Date, the Liquidation Trustee may (i) prosecute any objection to a Claim filed by the Debtor prior to the Effective Date and (ii) object to the allowance of Claims filed with the Bankruptcy Court before, on or after the Effective Date with respect to which

liability is Contested. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 11.3.

**11.3    Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Liquidation Trustee shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**11.4    Entitlement to Plan Distributions Upon Allowance.**

Notwithstanding any other provision of this Joint Plan, except as otherwise agreed by the Liquidation Trustee, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim, subject to the setoff rights as provided in Section 10.8.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive any Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

**11.5    Estimation of Claims.**

The Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Liquidation Trustee or the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the, event that the Bankruptcy Court estimates any Contested Claim, that estimated amount shall constitute the Allowed amount of such Claim for all purposes under this Joint Plan. All of the objection, estimation, settlement and resolution procedures set forth in this Joint Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

<h3 style="text-align:center">ARTICLE XII<br>CONDITIONS PRECEDENT TO CONFIRMATION OF THE JOINT PLAN AND THE OCCURRENCE OF THE EFFECTIVE DATE</h3>

**12.1    Conditions Precedent to Confirmation.**

The following shall be conditions precedent to confirmation of this Joint Plan:

(a)     the Bankruptcy Court shall have entered an Order or Orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (ii) authorizing the solicitation of votes with respect to this Joint Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of this Joint Plan, (iv) confirming and giving effect to the terms

and provisions of this Joint Plan, (vi) determining that all applicable tests, standards and burdens in connection with this Joint Plan have been duly satisfied and met by the Debtor and this Joint Plan, (vii) approving the Plan Documents and (viii) authorizing the Debtor to execute, enter into and deliver the Plan Documents, and to execute, implement and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer or revesting of Assets contemplated by this Joint Plan and the Plan Documents;

(b)      the Confirmation Order, the Plan Documents and this Joint Plan are each in a form and substance satisfactory to the Debtor; and

(c)      the Confirmation Order shall include determinations that all of the settlements and compromises contained in this Joint Plan meet the applicable standards under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

## 12.2    Conditions Precedent to the Occurrence of the Effective Date.

The following shall be conditions precedent to the occurrence of the Effective Date with respect to the Debtor's Estate:

(a)      the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect and not be subject to any stay or injunction, and the Debtor shall not have elected to delay the occurrence of the Effective Date with respect to the Estate in accordance with Section 12.5 of this Joint Plan;

(b)      the Liquidation Trustee and the Debtor Representative shall have accepted, in writing, the terms of their service and compensation, and such terms and compensation shall have been approved by the Bankruptcy Court in the Confirmation Order;

(c)      the Liquidation Trust shall have been established; and

(d)      all necessary consents, authorizations and approvals shall have been given for the transfers or revestings of property and the payments provided for or contemplated by this Joint Plan and the Plan Documents, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtor under this Joint Plan and the Plan Documents.

## 12.3    Waiver of Conditions.

The Debtor, in consultation with the Committee, may waive any one or more of the conditions set forth in Section 12.1 or Section 12.2 in writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest.

## 12.4    Effect of Non-Occurrence of the Effective Date.

If the Effective Date shall not occur (except as provided in Section 12.5 hereof), this Joint Plan shall be null and void and nothing contained in this Joint Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) prejudice in any manner the rights of the Debtor,

16-51552-amk    Doc 405    FILED 05/22/17    ENTERED 05/22/17 17:52:40    Page 45 of 54

including, without limitation, any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtor.

**12.5** **Option to Delay Occurrence of the Effective Date.**

Notwithstanding the foregoing or anything in this Joint Plan to the contrary, the Debtor, in consultation with the Committee, reserves the right to delay the occurrence of the Effective Date.

**ARTICLE XIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**13.1** **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, except to the extent inconsistent with Section 15.2, all executory contracts and unexpired leases of the Debtor (including but not limited to the Excluded Contracts and Excluded Leases) shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate motions to reject, assume or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; (ii) contracts and leases that were assumed and assigned to the Buyer by Order of the Bankruptcy Court before the entry of the Confirmation Order; (iii) any guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtor or to indemnify the Debtor; (iv) agreements with third parties regarding preservation of the confidentiality of documents produced by the Debtor; and (v) agreements with the Buyer and the Debtor that are executory contracts on the Effective Date. Any Order entered post-confirmation by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered pre-confirmation.

Receipt of this Joint Plan by the counterparties to the executory contracts and unexpired leases of the Debtor rejected pursuant to this Section 13.1 shall constitute adequate and sufficient notice that (i) any Claims arising under the contract, lease or other agreement or related thereto shall be treated under this Joint Plan as General Unsecured Claims as against the Debtor that was a party to the contract, lease or other agreement, and (ii) the Debtor is no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

This Joint Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected pursuant to this section, and the Debtor shall have no liability thereunder except as is specifically provided in this Joint Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement, executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtor and its Estate.

Notwithstanding the rejection of any of the Debtor's executory contracts under this Joint Plan or by separate motion, the Debtor or the Liquidation Trustee, as applicable, shall retain and be entitled to enforce any warranties provided to, or for the benefit of, the Debtor under applicable federal or state law; provided, however, for the avoidance of doubt, that the foregoing does not include any warranties provided to, or for the benefit of, the Debtor pursuant to any contract that has been assumed and assigned by order entered by the Bankruptcy Court on or before the Effective Date.

**13.2     Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts and unexpired leases pursuant to this Joint Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date. **Any such Claims for which a proof of claim is not filed and served by the deadlines set forth above shall be forever barred from assertion and shall not be enforceable against the Debtor, its Estate or its Assets.** Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under this Joint Plan subject to objection by the Liquidation Trustee.

**ARTICLE XIV**
**RETENTION OF JURISDICTION**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction (i) over any matter (a) arising under the Bankruptcy Code, or (b) arising in or related to the Chapter 11 Case or this Joint Plan, and (ii):

(a)     to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XIII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable;

(b)     to hear and determine any and all Claims and any related disputes, including, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease;

(c)     to determine any and all adversary proceedings, applications, motions and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Joint Plan, may be instituted by the Liquidation Trustee after the Effective Date;

(d)     to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(e)     to issue such orders in aid of execution of this Joint Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(f)     to consider any modifications of this Joint Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)     to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under this Joint Plan or the Bankruptcy Code;

(h)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with this Joint Plan, the Liquidation Trust Agreement, and any other Plan Documents or their interpretation, implementation, enforcement or the consummation;

(i)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with the Confirmation Order (and all exhibits to this Plan) or its interpretation, implementation, enforcement or consummation;

(j)     to resolve any disputes concerning whether a Person or Entity had sufficient notice of the Chapter 11 Case, the General Bar Date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of this Plan for the purpose of determining whether a Claim is discharged hereunder or for any other purpose;

(k)     to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estate;

(l)     to determine such other matters that may be set forth in this Joint Plan or the Confirmation Order, or that may arise in connection with this Joint Plan or the Confirmation Order;

(m)     to hear and determine matters concerning state, local and federal taxes, fines, penalties or additions to taxes for which the Debtor may be liable in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtor, Liquidation Trustee or any Person under this Joint Plan;

(o)     to hear and determine all controversies, suits and disputes that may relate to, impact upon or arise in connection with Causes of Action of the Debtor (including the Tetra Avoidance Action and any Causes of Action against Genesis) commenced by the Liquidation Trustee, the Debtor, the Debtor Representative, or any third parties, as applicable, before or after the Effective Date, except to the extent that the Liquidation Trustee or the Debtor Representative consents to the determination of any such controversy, suit or dispute by another court of competent jurisdiction;

(p)     to hear and determine any matters related to enforcement of rights against the Buyer under the Asset Sale Agreement;

(q)     to enter an order or final decree closing the Chapter 11 Case;

(r)     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of this Joint Plan or the Confirmation Order; and

(s)     to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

### 15.1    Satisfaction of Claims.

(a)     Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in this Joint Plan, the distributions and rights afforded under this Joint Plan and the treatment of Claims under this Joint Plan shall be in exchange for and in complete satisfaction of all Claims against the Debtor. Except as otherwise specifically provided in this Joint Plan, as of the Effective Date any interest accrued on Claims against the Debtor from and after the Petition Date shall be cancelled.

(b)     Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in this Joint Plan, all Persons shall be precluded from asserting against the Debtor, the Liquidation Trustee or their respective successors or property, any other or further Claims, debts, rights, Causes of Action, liabilities based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Petition Date, including any Claims that are not placed in a Class under this Joint Plan.

(c)     No Person holding a Claim may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under this Joint Plan, other than Assets required to be distributed to that Person under this Joint Plan.

### 15.2    Special Provisions Regarding Insurance Policies and Insured Claims.

15.2.1 Insurance Policies. For the avoidance of doubt, the Debtor's and Estate's rights with respect to all Insurance Policies (including all Insurance Policies that may have expired prior to the Petition Date, all Insurance Policies in existence on the Petition Date, all Insurance Policies entered into by the Debtor after the Petition Date, and all Insurance Policies under which the Debtor holds rights to make, amend, prosecute and benefit from claims) shall revest in the Debtor and/or Debtor Representative as necessary to pursue and prosecute any Causes of Action, and to the extent that any Insurance Policies are not necessary for the pursuit and prosecution of any Causes of Action, all the Debtor's and Estate's rights with respect to such Insurance Policies shall be transferred to the Liquidation Trust from the Effective Date until its dissolution.

Notwithstanding anything to the contrary in this Joint Plan, any Insurance Policy in effect as of the Effective Date shall continue in effect after the Effective Date pursuant to its terms and conditions. Nothing in this Joint Plan shall relieve any insurer from performing its obligations under the Insurance Policies, regardless of whether such obligations arise prior to or after the Effective Date.

Notwithstanding any default by the Debtor with respect to any of the Insurance Policies, nothing in the Prime Sale Order, any underlying agreements, or this Joint Plan shall be construed or applied to modify, impair, or otherwise affect the enforceability of the Insurance Policies or any coverage thereunder with regard to any claims or Causes of Action. This Joint Plan shall be liberally construed to protect the interests of all creditors in all Causes of Action and to limit any Claims against the Estate.

15.2.2   Insured Claims shall be satisfied from the proceeds of any applicable Insurance Policy.  Insured Claims are not classified and, pursuant to Section 10.9, are not entitled to any distributions under this Joint Plan until the relevant holder has exhausted all remedies with respect to the applicable Insurance Policy. To the extent an Insured Claim is not satisfied in full from the proceeds of the applicable Insurance Policy, any Claim remainder shall be classified in the applicable Class under this Joint Plan and, if allowed, treated in accordance with the treatment of Claims in that Class under this Joint Plan. Nothing in this Section 15.2.2 shall constitute a waiver of any claim, right or cause of action the Debtor or its Estate may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in this Joint Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which any Debtor is an insured or beneficiary or for purposes of any insurance recovery.

**15.3    Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise. All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise compromised and settled pursuant to this Joint Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in this Joint Plan. The right of the Debtor or the Liquidation Trustee to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a subordinated Claim at any time shall be modified to reflect such subordination. Unless the Confirmation Order or other order of the Bankruptcy Court provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim.

**15.4    Service of Documents.**

Any notices, requests and demands required or permitted to be provided under this Joint Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be

deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

if to the Debtor:

> McDONALD HOPKINS LLC
> 600 Superior Avenue, East
> Suite 2100
> Cleveland, OH 44114
> Attention: Sean D. Malloy

if to the Committee:

> SILLS CUMMIS & GROSS P.C.
> One Riverfront Plaza
> Newark, NJ 07102
> Attn: Andrew H. Sherman

## 15.5    Headings.

The headings used in this Joint Plan are inserted for convenience only, and neither constitutes a portion of this Joint Plan nor in any manner affect the construction of the provisions of this Joint Plan.

## 15.6    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Ohio, without giving effect to the conflicts of laws principles thereof, shall govern the construction of this Joint Plan and any agreements, documents and instruments executed in connection with this Joint Plan, except as otherwise expressly provided in such instruments, agreements or documents.

## 15.7    Exemption from Transfer Taxes.

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with this Joint Plan, including the creation of any mortgage, deed of trust, lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Joint Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax. Transfers made under this Joint Plan include, without limitation, any transfer, sale or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtor before or after the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale or exchange closes. To effectuate the terms of this Section, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of this Joint Plan.

## 15.8    Notice of Entry of Confirmation Order and Relevant Dates.

Promptly upon entry of the Confirmation Order, the Debtor shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under this Joint Plan, including, but not limited to, the deadline for filing rejection damage Claims.

**15.9    Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Joint Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court. No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, except as set forth in this Joint Plan or as ordered by the Bankruptcy Court.

**15.10    Modification of the Joint Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of this Joint Plan may be proposed in writing by the Debtor, with the prior written consent of the Committee,    at    any time before confirmation, provided that this Joint Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Debtor, with the prior written consent of the Committee, may modify this Joint Plan at any time after confirmation and before substantial consummation, provided that this Joint Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms this Joint Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications. A holder of a Claim that has accepted this Joint Plan shall be deemed to have accepted such Joint Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**15.11    Revocation of Plan.**

The Debtor reserves the right to revoke and withdraw this Joint Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date. If the Debtor revokes or withdraws this Joint Plan, or if the Effective Date does not occur, then this Joint Plan and all settlements and compromises set forth in this Joint Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of this Joint Plan shall be deemed to constitute a waiver or release of any Claims against the Debtor or to prejudice in any manner the rights of the Debtor or any other Person in any other further proceedings involving the Debtor.

**15.12    Compliance with Tax Requirements.**

In connection with this Joint Plan, the Debtor and the Liquidation Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including

income, withholding and other tax obligations, on account of such Plan Distribution. The Liquidation Trustee has the right to withhold a Plan Distribution until such holder has made arrangements satisfactory to the Liquidation Trustee for payment of any such tax obligations. The Liquidation Trustee has the right to withhold a Plan Distribution until the holder of the Claim upon which distribution is to be made provides the Liquidation Trustee with IRS Form W-9 and any other information determined by the Liquidation Trustee to be necessary or appropriate to effect information reporting and the withholding of taxes. If the Liquidation Trustee has not received IRS Form W-9 or other requested tax reporting information from the holder of a Claim before the relevant Plan Distribution Date, any property or Cash to be distributed pursuant to this Joint Plan shall, pending receipt of IRS Form W-9 or such other requested information, be treated as an unclaimed distribution under this Joint Plan, as set forth in Section 10.3.2.

## 15.13  **Binding Effect.**

This Joint Plan shall be binding upon the Debtor, the Buyer, the holders of all Claims, parties in interest, Providers, Persons and each of their respective successors and assigns. Except as specifically provided in this Joint Plan, to the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of this Joint Plan, the terms of this Joint Plan shall be binding and conclusive.

## 15.14  **Rates.**

This Joint Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

## 15.15  **Nondischarge of the Debtor.**

In accordance with section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims. However, no holder of a Claim may receive any payment from, or seek recourse against, any Assets that are to be distributed under this Joint Plan other than Assets required to be distributed to that holder pursuant to this Joint Plan. **As of the Confirmation Date, all Persons are enjoined from asserting against any property that is to be distributed under this Joint Plan any Claims, rights, causes of action, or liabilities based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in this Joint Plan or the Confirmation Order.**

## 15.16  **Extensions of Time.**

For cause shown, any deadlines herein which are applicable to the Debtor, its Estate, or the Liquidation Trust and which are not otherwise specifically extendable as provided in this Joint Plan may be extended by the Bankruptcy Court.

## 15.17  **No Admissions.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PROCEEDINGS CONCERNING CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS JOINT PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS JOINT PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES AND OTHER LEGAL EFFECTS OF THIS JOINT PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR IN THE CHAPTER 11 CASE.**

Dated:  May 22, 2017                     Respectfully submitted,

CH LIQUIDATION ASSOCIATION F/K/A
COSHOCTON COUNTY MEMORIAL HOSPITAL
ASSOCIATION

By: /s/ Joseph Oriti_____
Name: Joseph Oriti
Title: Chief Restructuring Officer

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: /s/ Bradley Hamman_____
Name: Bradley Hamman
Title: Chair